http://www.va.gov/vetapp16/Files3/1626391.txt

Citation Nr: 1626391 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 05-34 928 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia

THE ISSUES

1. Entitlement to an effective date prior to June 8, 2011 for the grant of service connection for left lower extremity peripheral neuropathy.

2. Entitlement to an effective date prior to June 8, 2011 for the grant of service connection for right lower extremity peripheral neuropathy.

3. Entitlement to an effective date prior to February 14, 2012 for the grant of service connection for left upper extremity peripheral neuropathy.

4. Entitlement to an effective date prior to February 14, 2012 for the grant of service connection for right upper extremity peripheral neuropathy.

5. Entitlement to an effective date prior to June 8, 2011 for the grant of service connection microalbuminuria

6. Entitlement to an initial rating in excess of 20 percent for type II diabetes mellitus.

7. Entitlement to an initial rating in excess of 10 percent for left lower extremity peripheral neuropathy.

8. Entitlement to an initial rating in excess of 10 percent for right lower extremity peripheral neuropathy.

9. Entitlement to an initial rating in excess of 10 percent for left upper extremity peripheral neuropathy.

10. Entitlement to an initial rating in excess of 10 percent for right upper extremity peripheral neuropathy.

11. Entitlement to an initial, compensable rating for microalbuminuria.

REPRESENTATION

Veteran represented by: Virginia A. Girard-Brady, Attorney at Law

ATTORNEY FOR THE BOARD

Mike A. Sobiecki, Associate Counsel

INTRODUCTION

The Veteran served on active duty from October 1966 to October 1969. 

This matter is before the Board of Veterans' Appeals (Board) on from a July 2011 rating decision of the Roanoke, Virginia, Regional Office (RO) of the Department of Veterans Affairs (VA).

In December 2014, the Board remanded the claims on appeal for further development.

The appeal previously included claims for entitlement to service connection for right and left upper extremity peripheral neuropathies; however, both claims were granted in a September 2015 rating decision. In May 2016, the Veteran filed a notice of disagreement with the initial ratings and effective dates for both disabilities. Thus, they are before the Board and will be addressed in the remand portion of the decision below.

In December 2006, the Veteran appeared at a hearing before a member of the Board other than the undersigned. Testimony taken during this hearing is not pertinent to remaining issues on appeal as the hearing pertained to the service connection claims rather than the downstream rating and effective date issues.

The issues of entitlement to an earlier effective date for microalbuminuria, and entitlement to increased ratings for diabetes and microalbuminuria are discussed and decided below. The remaining issues on appeal are addressed in the REMAND portion of the decision below and are REMANDED to the agency of original jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran's microalbuminuria had its onset on July 27, 2007.

2. Throughout the course of the appeal, the Veteran's type II diabetes mellitus has been treated with oral hypoglycemic medications and a restricted diet; regulation of activities has not been shown.

3. Throughout the course of the appeal, the Veteran has been compensated for loss of use of creative organ; deformity of penis has not been shown.

4. Throughout the course of the appeal, the Veteran's microalbuminuria has been asymptomatic and, accordingly, has resulted in no functional impairment.

CONCLUSIONS OF LAW

1. The criteria for an effective date of July 27, 2007, but no earlier, for the grant of service connection for microalbuminuria have been met. 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. § 3.400 (2015).

2. The criteria for a disability rating in excess of 20 percent for service-connected type II diabetes mellitus have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.119, Diagnostic Code (DC) 7913 (2015).

3. The criteria for a separate compensable disability rating for service-connected erectile dysfunction have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.115b, DC 7522 (2015).

4. The criteria for a compensable disability rating for service-connected microalbuminuria have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.115b, DC 7541 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015).

The appeal arises from a disagreement with the initially assigned disability ratings and effective dates after service connection was granted. Once a decision awarding service connection, a disability rating, and an effective date has been made, section 5103(a) notice is no longer required because the claim has already been substantiated.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c).

The Veteran's service treatment and personnel records have been obtained. Post-service VA and private treatment records have also been obtained. More recent treatment records were obtained pursuant to the Board's remand.

The Veteran was provided VA medical examinations in June 2011 and March 2015, and a supplemental medical opinion was authored in September 2015, including pursuant to the Board's remand. The examinations, along with the expert medical opinions, are sufficient evidence for deciding the claims. The Board notes that the March 2015 VA medical examinations were completed without a review of the entire claims file, though the Veteran's service treatment records, VA treatment records, and prior VA medical examinations were reviewed. In light of this, the Board finds that the examinations and reports sufficiently describe the current state of the Veteran's disabilities and a review of the entire claims file would not have changed the objective findings made during the examinations. See Snuffer v. Gober, 10 Vet. App. 400, 403-04 (1997). The VA medical examiner did have an opportunity to review the entire claims file prior to authoring the September 2015 supplemental medical opinions. Accordingly, the Board finds that it is able to make a fully informed evaluation of the claims to be decided on appeal. Thus, VA's duty to assist has been met for these claims.

II. Effective Date Claim

The Veteran seeks entitlement to an effective date prior to June 8, 2011 for the award of service connection for microalbuminuria. For the reasons that follow, the Board finds that an effective date of July 27, 2007, but no earlier, is warranted.

The effective date for a grant of presumptive service connection is the day after separation from service or day entitlement arose, if a claim is received within one year of separation from service; otherwise, the date of receipt of claim, or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110(b)(1); 38 C.F.R. § 3.400 (b)(2)(i). A medical diagnosis attesting to the existence of a disability may be necessary to establish the effective date for an award of service connection for that disability. See Young v. McDonald, 766 F.3d 1348, 1352-53 (Fed. Cir. 2014). It cannot be said that entitlement arises prior to such a diagnosis. See id. However, lay evidence may be competent and sufficient to establish the existence of a service-connected medical condition if (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing the symptoms at the time supports a later diagnosis by a medical professional. Id. at 1353 (citing Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007)).

In this case, the Board finds that the date of the claim is April 12, 2004, which is the date a claim for type II diabetes mellitus was received by VA. No separate claim for microalbuminuria was filed; rather, service connection would be granted in a July 2011 rating decision on the basis of a diagnosis in a June 2011 VA medical examination. As implied, the original date of diagnosis was in June 8, 2011, and this date has been interpreted as the date entitlement arose and, accordingly, established as the effective date of service connection. 

Nonetheless, in December 2014, the Board remanded this claim to the AOJ and requested a supplementary retrospective medical opinion as to the onset of microalbuminuria because the evidence of record indicated that it may have had its onset prior to the June 8, 2011 VA examination. This supplemental medical opinion was authored in September 2015 and, therein, the VA medical examiner wrote that the earliest date of microalbuminuria was July 27, 2007. This conclusion was based on VA lab records of the same date.

Accordingly, the Board finds that the date entitlement arose for service connection for microalbuminuria is July 27, 2007, based on the persuasive medical opinion. To the extent that the Veteran has contended otherwise, the Board finds that the Veteran is a layperson not competent to identify such a medical condition that is based on lab results, and the Board also notes that the Veteran has not specifically alleged prior symptoms and that the condition has been asymptomatic throughout its existence. See Jandreau, 492 F.3d at 1377. Moreover, there is no competent evidence contrary to the Board's finding.

Accordingly, the Board concludes that the effective date for the grant of service connection for microalbuminuria is July 27, 2007. This date is the latter of the date of receipt of the claim or the date entitlement arose. See 38 C.F.R. § 3.400(b). There is no doubt to be resolved. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. An effective date of July 27, 2007, but no earlier, is warranted.

III. Increased Rating Claims

A. Legal Framework

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C.A. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

Diabetes Mellitus

The Veteran's type II diabetes mellitus is rated at 20 percent pursuant to DC 7913. 38 C.F.R. § 4.119.

According to DC 7913, a 20 percent rating is assigned for diabetes mellitus requiring insulin and restricted diet, or oral hypoglycemic agent and restricted diet. A 40 percent rating is warranted for diabetes mellitus requiring insulin, restricted diet, and regulation of activities. A 60 percent rating is warranted for diabetes mellitus requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. A 100 percent rating is warranted for diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119, DC 7913.

The criteria for a rating in excess of 20 percent for diabetes mellitus necessitate a requirement of "regulation of activities." This is so for a 40, 60, and 100 percent rating. With respect to a 40 percent rating, the United States Court of Appeals for Veterans Claims (Court) has held that all the criteria must be met given the clearly conjunctive structure of the language used in DC 7913. See Camacho v. Nicholson, 21 Vet. App. 360, 366 (2007).

Additionally, "regulation of activities" is defined in DC 7913 as "avoidance of strenuous occupational and recreational activities." Medical evidence is required to support the "regulation of activities" criterion. 38 C.F.R. § 4.119, DC 7913; Camacho, 21 Vet. App. at 364.

Two notes follows the rating criteria. Note (1) states that compensable complications of diabetes are to be evaluated separately unless they are part of the criteria used to support a 100 percent evaluation. Noncompensable complications are considered part of the diabetic process under DC 7913. Note (2) states that when diabetes mellitus has been conclusively diagnosed, do not request a glucose tolerance test solely for rating purposes.

Erectile Dysfunction

The Veteran's erectile dysfunction is presently rated as noncompensable and therefore included as part of the diabetic process. See 38 C.F.R. § 4.119, DC 7913, Note (1). The ratings schedule does not provide a DC for rating erectile dysfunction. Instead, such impairment is compensated by special monthly compensation (SMC) at the statutory rate for loss of use of a creative organ, pursuant to 38 U.S.C.A. § 1114(k).

The ratings schedule provides that if there is deformity of the penis associate with erectile dysfunction, such impairment warrants a 20 percent evaluation. 38 C.F.R. § 4.115b, DC 7522. In every instance where the schedule does not provide a noncompensable evaluation for a DC, a noncompensable evaluation will be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

Microalbuminuria

The Veteran's microalbuminuria is presently rated as noncompensable and therefore included as part of the diabetic process. See 38 C.F.R. § 4.119, DC 7913, Note (1). Microalbuminuria is a renal condition. Renal involvement in the diabetic process is to be rated pursuant to DC 7541 using the diagnostic criteria for renal dysfunction. See 38 C.F.R. § 4.115b.

Pursuant to the diagnostic criteria for renal dysfunction, a noncompensable rating is warranted for evidence of albumin and casts with history of acute nephritis; or hypertension noncompensable under DC 7101. See 38 C.F.R. § 4.115a. A 30 percent rating is warranted for constant albumin or recurring with hyaline and granular casts or red blood cells; or transient or slight edema or hypertension at least 10 percent disabling under DC 7101.

Pursuant to DC 7101 for hypertension, a 10 percent rating is warranted where diastolic pressure is predominantly 100 or more; or systolic pressure is predominantly 160 or more; or minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. See 38 C.F.R. § 4.104, DC 7101.

B. Analysis

The Veteran seeks a disability rating in excess of 20 percent for type II diabetes mellitus and a compensable disability rating for microalbuminuria. For the reasons that follow, the Board finds that an increased rating is not warranted for either condition.

The Board also recognizes that the Veteran has additional diabetic complications of bilateral upper extremity peripheral neuropathy, bilateral lower extremity neuropathy, and erectile dysfunction. The both upper and lower extremity peripheral neuropathies are assigned separate compensable ratings and will be discussed in the remand portion of this decision. The erectile dysfunction is assigned a noncompensable rating and is considered part of the diabetic process. See 38 C.F.R. § 4.119, DC 7913, Note (1). Therefore, even though a separate issue was not certified on appeal, whether a separate compensable rating is warranted for erectile dysfunction will be considered below.

Diabetes Mellitus

For the reasons that follow, the Board finds that an increased rating is not warranted.

A review of the Veteran's private medical records from Dr. D.B., dating 1997 through 2004, show that the Veteran's type II diabetes mellitus was treated with oral hypoglycemic agents and a restricted diet. The June 2011 and March 2015 VA examinations show the same, though the dose, frequency, and specific hypoglycemic agents have changed over the years. The Veteran's VA treatment records are also in concurrence.

While the Veteran has been counseled on exercise and weight loss to improve his disabilities, a medical provider has never specifically prescribed a regulation of activities. Moreover, recommending exercise tends to be inapposite to avoiding strenuous activities. The Board also notes that VA medical examination reports have noted that his disabilities would prevent him from performing physical labor in excess of 5 metabolic equivalents (METS). However, these reports merely identify the current state of his disabilities and their functional impacts; they are not considered to be prescriptions or orders by a treating medical provider.

In summary, the Board finds that the Veteran's type II diabetes mellitus has been treated with oral hypoglycemic agents and a restricted diet, throughout the course of the appeal. The Veteran has not been prescribed insulin or a regulation of activities. Given the conjunctive nature of DC 7913 and the absence of treatment with insulin and a regulation of activities, the Board concludes that the Veteran's type II diabetes mellitus does not more nearly approximate a rating in excess of 20 percent pursuant to DC 7913. See 38 C.F.R. §§ 4.7, 4.119. There is no doubt to be resolved; a disability rating in excess of 20 percent for type II diabetes mellitus is not warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

Service connection is also in effect for erectile dysfunction and microalbuminuria as diabetic complications, and the ratings for these two disorders are combined with the rating for type II diabetes mellitus. See 38 C.F.R. § 4.119, DC 7913, Note (1). The Board will therefore consider whether separate, compensable ratings are warranted for these disorders.

Erectile Dysfunction

For the reasons that follow, the Board finds that a separate, compensable rating for erectile dysfunction is not warranted.

As noted above, the ratings schedule does not provide a specific DC for erectile dysfunction; instead, such impairment is compensated with SMC for loss of use of a creative organ. 38 U.S.C.A. § 1114(k). The Board notes that the Veteran is in receipt of this SMC with an effective date that is the same as for his service-connected type II diabetes mellitus.

DC 7522 provides that a 20 percent rating may be warranted for a penile deformity with loss of erectile power, which is the most analogous DC for erectile dysfunction when not considering the SMC provision. The evidence of record shows that the Veteran has loss of erectile power; however, there is no penile deformity. See, e.g., March 2015 VA examination report. The Board notes that the Veteran has also not alleged a penile deformity. Thus, the Veteran's erectile dysfunction does not more nearly approximate the criteria corresponding to a 20 percent rating pursuant to DC 7522. There is no doubt to be resolved, a separate 20 percent rating pursuant to DC 7522 is not warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.115b. The Veteran's erectile dysfunction is properly rated as noncompensable under the schedular criteria. See 38 C.F.R. § 4.31.

Microalbuminuria

For the reasons that follow, the Board finds that a separate, compensable rating for microalbuminuria is not warranted.

As the Board found above, the Veteran's microalbuminuria dates back to July 27, 2007. Since that point in time, the evidence of record has shown the disability to be asymptomatic and result in no functional impairment. See March 2015 VA examination report and June 2011 VA examination report. The evidence does not reveal acute nephritis. See 38 C.F.R. § 4.115. 

The ratings schedule for renal dysfunction also provides a compensable rating where hypertension warrants at least a 10 percent rating pursuant to DC 7101. See 38 C.F.R. §§ 4.104, 4.115a. The Veteran's most recent March 2015 VA examination provided blood pressure readings of 160 systolic over 90 diastolic, 155 systolic over 92 diastolic, and 150 systolic over 95 diastolic. The average blood pressure reading was 155 systolic over 95 diastolic. These readings do not meet the schedular criteria for a compensable rating pursuant to DC 7101. See 38 C.F.R. § 4.104. Moreover, the remaining evidence of record also does not indicate that these criteria have ever been met by history. There is no doubt to be resolved, a compensable rating for hypertension is not warranted for hypertension pursuant to DC 7101. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.104.

Given that the Veteran has no history of acute nephritis and that his hypertension does not approximate a compensable rating pursuant to DC 7101, the Board concludes that his microalbuminuria more nearly approximates the criteria for a noncompensable rating pursuant to DC 7541. 38 C.F.R. § 4.115. There is no doubt to be resolved, a compensable rating for microalbuminuria is not warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.104.

As neither the Veteran's erectile dysfunction or microalbuminuria warrant separate, compensable ratings, they will continue to be listed and evaluated as part of the diabetic process. 38 C.F.R. § 4.119, DC 7913, Note (1).

Additional Considerations

The Board has considered whether staged ratings maybe warranted for any of the above disabilities; however, it finds that its prescribed ratings are warranted for the entire period on appeal, pertinent to each individual disability. See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2009).

The Board has also considered whether an extraschedular rating is warranted. 38 C.F.R. § 3.321. The Court has set out a three-part test for determining whether a veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) if the first two steps show that the rating schedule is inadequate then the final step requires the disability to be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service. See Thun v. Peake, 22 Vet. App. 111, 115-16 (2008). Referral for extraschedular consider may also be made to consider the compound/combined impact of multiple service-connected disabilities in determining whether referral for extraschedular consideration is needed. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014).

Here, the evidence shows that the Veteran's type II diabetes mellitus is treated with oral hypoglycemic agents and a restricted diet. These treatment methods are explicitly considered in the schedular criteria of DC 7913. The evidence also shows that the Veteran has complications from his diabetes that are separately evaluated where applicable. See 38 C.F.R. § 4.119, DC 7913, Note (1). There is no indication that the ratings schedule is inadequate to evaluate the symptoms and impairments resulting from these complications. The Board notes that the Veteran is also in receipt for SMC for loss of use of a creative organ pursuant to 38 U.S.C.A. § 1114(k) for his erectile dysfunction. The Board concludes that the assigned schedular evaluations for the service-connected disabilities are adequate, both when they are considered individually and in the aggregate, and, therefore, referral for extraschedular consideration is not required. See Thun, 22 Vet. App. 111; Johnson, 762 F.3d 1362.

Lastly, the Board notes that a claim for a total disability rating due to service-connected disabilities (TDIU) may be considered as part-and-parcel of a claim for an increased rating; however, in this instance, the evidence of record, to include the Veteran's statements, has not raised such an issue. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

ORDER

An effective date of July 27, 2007, but no earlier, for the grant of service connection for microalbuminuria is granted.

A disability rating in excess of 20 percent for type II diabetes mellitus is denied.

A separate compensable disability rating for erectile dysfunction is denied.

A compensable disability rating for microalbuminuria is denied.

REMAND

Further development of and due process for the remaining claims for earlier effective dates and increased ratings for upper and lower extremity peripheral neuropathies is required before a decision may be made. 

Peripheral Neuropathy Upper Extremities 

The appeal previously included claims of service connection for peripheral neuropathy of the right and left upper extremities. Service connection for these disabilities was granted in a September 2015 rating decision. In May 2016, the Veteran expressed disagreement with the initial ratings and effective dates of service connection on a standard VA form. A statement of the case (SOC) has not yet been issued. Remand is required for the issuance of a SOC. 38 C.F.R. § 19.9(c); Manlincon v. West, 12 Vet. App. 238 (1999).

Peripheral Neuropathy Lower Extremities

With regards to the claims for an earlier effective date for right and left lower extremity peripheral neuropathies, in December 2014 the Board remanded these claims for a VA medical opinion. The Board's concern was that there was evidence of potentially related symptoms prior to the initial diagnosis of lower extremity peripheral neuropathies at the June 2011 VA examination. In March 2015, the Veteran underwent a VA examination to evaluate the current severity of these two disabilities; however, the examiner did not provide an opinion as to their date of onset. The AOJ requested a supplemental opinion from this examiner, which was provided in September 2015. The examiner mistakenly provided an opinion for the date of onset of peripheral neuropathy of the upper extremities, that being between June 8, 2012 and March 25, 2015. Recognizing this mistake, the AOJ requested further clarification, which was received the same month. Without explanation, the examiner replied that the peripheral neuropathies of the lower extremities "began between 6-8-12."

Given this response, it is apparent to the Board that the examiners response was an incomplete copy of the prior response for the upper extremity neuropathies. Further, the response did not consider that the lower extremity peripheral neuropathies were diagnosed by VA in June 2011, and that the issue was whether these service-connected disabilities may have arisen prior to this date, as evidenced by the Veteran's prior symptoms and statements. Accordingly, the Board finds the examiner's opinion to be inadequate to decide the effective date claims. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Remand is needed so that a new VA medical opinion may be obtained.

Given the posture of the effective date claims for both upper and lower peripheral neuropathies, the Board finds that the rating claims are intertwined with the effective date claims. See Harris v. Derwinski, 1 Vet. App. 180 (1991). Therefore, the claims will also be remanded.

Accordingly, these issues are REMANDED for the following actions:

1. Issue a SOC addressing the claims for an increased ratings and earlier effective date of service connection for right and left upper extremity peripheral neuropathy. The Veteran should be provided notice that in order to continue his appeal of these issues, a substantive appeal (via VA Form 9) must be filed. 

2. Thereafter, obtain a VA retrospective medical opinion regarding the date of onset of the service-connected right and left lower extremity peripheral neuropathy. The entire claims file must be reviewed in conjunction with the writing of this opinion.

The Board notes that right and left lower extremity peripheral neuropathy were diagnosed in a June 2011 VA examination. However, the record contains medical and lay evidence of potentially related symptoms that may have indicated the existence of these disabilities prior to that date.

A complete rationale must be provided for this opinion. The rationale must consider and discuss the pertinent evidence of record.

3. Finally, readjudicate the claims remaining on appeal. If any of the benefits sought remain denied, issue a supplemental statement of the case and return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court or additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112.

______________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs