Citation Nr: 1710355 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 09-10 377 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUES

1. Entitlement to a compensable rating for diabetic retinopathy.

2. Entitlement to a rating higher than 10 percent for residuals due to stroke.

3. Entitlement to a rating higher than 20 percent for diabetes mellitus type II.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

D. M. Donahue Boushehri, Counsel 



INTRODUCTION

The Veteran served on active duty from August 1968 to June 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 2008, May 2012, and May 2014 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Sioux Falls, South Dakota.

In an April 2016 decision, the Board remanded the claims for additional development. At that time, the issues of entitlement to service connection for posttraumatic stress disorder (PTSD) and headaches were also on appeal. Since that time, the AOJ granted service connection for PTSD and headaches in an August 2016 decision. To date, the Veteran has not expressed disagreement with that decision, and the claims are no longer on appeal. 


FINDINGS OF FACT

1. The Veteran has not had any incapacitating episodes due to diabetic retinopathy, he has no visual field defect, and his corrected distant visual acuity is not worse than 20/50 in each eye.

2. The Veteran's bilateral intention tremor, a residual of his service-connected stroke, of the upper extremities has not been manifested by anything more than mild tics at any time during the appeal period.

3. The Veteran does not have any other residual disability that is separate and distinct from other service-connected disabilities or that can be attributed to the Veteran's stroke.

4. The Veteran's diabetes mellitus type II does not require any physician-prescribed regulation of activities.


CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for diabetic retinopathy are not met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.75, 4.79, 4.84, Diagnostic Codes 6000-6009 (2016).

2. The criteria for a disability rating in excess of 10 percent for residuals of a stroke have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.124a, Diagnostic Code 8008 (2016).

3. The criteria for a rating in excess of 20 percent for type II diabetes mellitus have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321(b)(1), 4.1, 4.2, 4.7, 4.10, 4.21, 4.119, Diagnostic Code 7913 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Assist

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

As noted above, in April 2016 the claims were remanded for additional development. The AMC acquired additional VA treatment records, and in August 2016 the Veteran was afforded an updated VA diabetes examination. The Board finds that the VA examinations of record are based on a correct factual background and contain all needed findings on which to evaluate this increased rating claims in appellate status. Accordingly, there has been substantial compliance with the remand directives and the duty to assist has been fulfilled. See Stegall v. West, 11 Vet. App. 268 (1998).


II. Increased Rating Claims

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10 (2016).

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. § 4.1, 4.2 (2016); Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7 (2016). When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3 (2016).

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided. 38 C.F.R. § 4.14 (2016). Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. Id.

Whether the issue is one of an initial rating or an increased rating, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as 'staged' ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). Generally, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when the current appeal arises from the initial rating assigned, consideration must be given to the evidence since the effective date of the claim as to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

 A. Diabetic Retinopathy

Under 38 C.F.R. § 4.79 Diagnostic Code 6006 retinopathy or maculopathy is rated under the General Rating Formula for Diagnostic Codes 6000 through 6009, which in turn provides that a 10 percent rating is warranted for incapacitating episodes having a total duration of at least 1 week, but less than 2 week, during the past 12 months; a 20 percent rating is warranted for incapacitating episodes having a total duration of at least 2 week, but less than 4 weeks, during the past 12 months; a 40 percent rating is warranted for incapacitating episodes having a total duration of at least 4 week, but less than 6 week, during the past 12 months; and a maximum 60 percent rating is warranted for incapacitating episodes having a total duration of at least 6 weeks in the past 12 months. A note to the General Rating Formula provides that for VA purposes, an incapacitating episode is a period of acute symptoms severe enough to require prescribed bed rest and treatment by a physician or other healthcare provider.

Under 38 C.F.R. § 4.79, Diagnostic Code optic neuropathy is evaluated based on visual impairment.

Under 38 C.F.R. § 4.76, the best distant visual acuity obtainable after best correction by glasses will be the basis of ratings for visual acuity (except in cases of keratoconus when contact lenses are required). Under 38 C.F.R. § 4.75, if there is a difference of more than 4 diopters of spherical corrections between the two eyes, the best possible visual acuity of the poorer eye without glasses or with a lens of not more than 4 diopters difference from that used with the better eye will be taken as the visual acuity of the poorer eye and if this exists close attention is given to the likelihood of congenital origin in mere refractive error.

Further, under § 4.84 Table V, Ratings for Central Visual Acuity Impairment, a compensable disability rating is not warranted for visual acuity impairment of 20/40 or better.

October 2004, July 2005, April 2009, and February 2010 VA progress notes indicated the Veteran's vision was 20/25 with correction. 

In a March 2005 statement, the Veteran reported he uses eye drops every day. 

During a July 2005 VA examination, the Veteran complained of decrease near vision, intermittent pain, and glaucoma. The examiner referred to a March 2005 assessment that included a diagnosis of glaucoma. Corrected distance was noted as 20/25. The diagnoses were glaucoma, refractive error, and diabetes with no ocular manifestations. 

An August 2007 VA progress note indicated that a December 2006 note included a history of mild background diabetic retinopathy (BDR), but not on recent exams. Upon examination, the examiner noted visual acuity as 20/30 and 20/40. The examiner also reported minimal BDR.

During a July 2008 VA examination, the examiner noted diagnoses of mild nonproliferative diabetic retinopathy, mild nuclear sclerotic cataracts, dry eye syndrome, and refractive error. The examiner noted the Veteran's diabetic retinopathy is painless and does not cause ocular pain. The optometrist noted corrected vision of 20/25 in both eyes. The examiner also noted full field to confrontation in the both eyes. 

In an October 2008 addendum, the examiner reviewed the claims file and opined that, as there is no history of proliferative retinopathy and no history of neovascularization in the anterior segment, it is less likely than not the Veteran's glaucoma was caused by his diabetes. 

In a March 2010 statement, the Veteran asserted his diabetic retinopathy is entitled to a higher disability rating due to cataracts. 

During a December 2010 VA examination, the examiner noted full visual field and corrected distance vision of 20/20- in the right eye, and 20/20 in the left eye. The examiner noted a diagnosis of glaucoma not related to diabetes or military service. 

A December 2010 VA general medical examination indicated he has not had eye complications from his diabetes. Upon physical examination, the examiner noted the Veteran's eyes revealed the pupils to be equally reactive to light and accommodation and the extraocular movements were intact. Visual fields were full grossly to confrontation.

A May 2013 VA treatment note indicated there was no diabetic retinopathy. 

A December 2013 VA treatment note indicates the Veteran has had no change since his last visit. The ophthalmologist noted visual acuity as 20/20-. 

During a May 2014 VA eye examination, the examiner noted corrected distance and near vision as 20/40 or better in both eyes. The examiner reported the Veteran has no visual field defect, but indicated no visual field testing was performed. There was a centrally located scotoma on the left. The examiner noted ptosis on the left with no decrease in visual acuity or other visual impairment. The Veteran also had preoperative cataracts in both eyes without decrease in visual acuity or other visual impairment. The examiner also noted a diagnosis of glaucoma without decrease in visual acuity or other visual impairment. The examiner reported refractive error, not related to service-connected diabetes or military service. The examiner reported cataracts, consistent with the Veteran's age. The examiner noted diabetes without ocular manifestations. The examiner noted glaucoma. The examiner also reported ptosis related to a cardiovascular accident. The examiner reported the Veteran's glaucoma, cataracts, and ptosis are not related to his service-connected diabetes or military service. 

In this case, VA ophthalmological examinations performed in July 2008, December 2010, and May 2014 objectively demonstrate that the Veteran was diagnosed with mild non-proliferative diabetic retinopathy not manifested by ocular pain or incapacitating episodes. In fact, there is no evidence that the Veteran has ever had any incapacitating episodes, i.e., a period of acute symptoms severe enough to require prescribed bed rest and treatment by a physician or other healthcare provider. Thus, a compensable rating is not warranted under the General Rating Formula for Diagnostic Codes 6000 through 6009.

Also, the VA examinations found that the Veteran had no visual field defect. Thus, the only means of rating the service-connected diabetic retinopathy is on the basis of impairment of the Veteran's visual acuity. In this regard, the Board need not determine at this time whether any impairment is due to the Veteran's service-connected diabetic retinopathy as opposed to the nonservice-connected cataracts. This is because the Veteran's visual acuity has never been to less than corrected distant visual acuity of 20/40 or worse in either eye and, as to this, for a compensable rating his corrected distant visual acuity must be to worse than 20/40 in each eye to be compensable. Accordingly, a compensable, and separate, disability evaluation is not warranted on the based on impaired visual acuity.

The Board further notes that other eye complications and symptoms have specifically been identified by competent medical evidence to not be part of the service-connected retinopathy. The Board only evaluated the symptoms that have been found by competent medical evidence to be part of the service-connected disability. The Board has fully considered the Veteran's lay statements, but as a lay person, is not competent to identify which symptoms are related to the service-connected disability and which are not.

 B. Stroke

The Veteran has claimed entitlement to an initial disability rating in excess of 10 percent for his service-connected residuals of a stroke. This disability is rated under 38 C.F.R. § 4.124a, Diagnostic Code 8008 (2016).

Under Diagnostic Code 8008, a thrombosis involving the blood vessels of the brain warrants a 100 percent rating for a period of six months. Thereafter, the rating will be based on associated residual disability, with a minimum rating of 10 percent. The minimum rating for residuals does not apply if there are no ascertainable residuals. 38 C.F.R. § 4.124a, Diagnostic Code 8008 (with NOTE that explains the requirements for the minimum rating for residuals under Diagnostic Codes 8000-8025).

In an December 2008 VA treatment note, the Veteran reported he had experienced some tingling and numbness in the left arm with weakness about a year ago and thought he had slept on the arm. He stated that in retrospect, he probably had a stroke at that time. Upon physical examination, the examiner noted he was mentally alert, cranial nerves were normal, and he had good power in the arms and legs. 

During an April 2010 VA examination, the Veteran complained of chronic left sided weakness, which he first noticed in 2006. He stated that he has had left sided weakness one morning when he tried to get out of bed. He stated that he did not know that he had a probable stroke until 2008 when an MRI was done. It demonstrated a small anterior limb internal capsular infarct. He stated that he had some improvement over the last few years with his left sided weakness. Upon examination, the examiner noted normal muscle bulk. Muscle strength was noted as normal against resistance in all muscles except for knee extensors and knee flexors which showed he was able to move limb against some resistance. Deep tendon reflexes were also noted as normal, except for bilateral ankle jerk which was hypoactive. Additionally, the examiner noted a bilateral intention tremor, worse on the left and diminished vibration sense to both lower extremities to ankles. An EEG showed no significant abnormalities. A head CT showed suggestions of recent lacunar infarction anterior limb right internal capsule. 

During a May 2014 VA examination, the examiner noted a diagnosis of cerebral infarction in 2006. The examiner noted the Veteran's complained of transient left paresis with no new motor deficits or acute neuro events since his last VA examination. The examiner noted the Veteran's condition does not require medication for control, and he is right hand dominant. Upon physical examination, there was no evidence of muscle weakness, pharynx or larynx conditions, respiratory conditions, sleep disturbances, or bowel or voiding impairment. The examiner noted speech was normal, and gait abnormal with mild antalgic gait secondary to degenerative joint disease issues. Strength testing was normal on elbow flexion and extension, wrist flexion and extension, grip, pinch, knee extension, and ankle plantar flexion and dorsiflexion. Deep tendon reflexes were normal except for the right and left ankle. There was no evidence of muscle atrophy attributable to a central nervous system condition. The examiner noted no evidence of depression, cognitive impairment or demention, or any other mental health conditions attributable to a central nervous system disease or treatment. The examiner reported the Veteran's regularly uses a cane for ambulation stability due to degenerative joint disease. 

In this case, the Board finds there is no evidence of a residual of a stroke which warrants a disability rating in excess of the currently assigned 10 percent disability rating. 

The Board recognizes that the Veteran reported having left sided weakness as residuals of his stroke. However, as evidenced by the record to include April 2010 and May 2014 VA examinations, there is no record of objective muscle weakness in any extremity. 

The Board considered whether the Veteran's bilateral intention tremor, noted in the April 2010 VA examination report, warrants disability rating in excess of 10 percent. Under Diagnostic Code 8103, a mild convulsive tic warrants a noncompensable disability rating. A moderate convulsive tic warrants a 30 percent disability rating. Although the VA examiner indicated the Veteran's bilateral intention tremor was worse on the left than the right, there is no evidence of any tremor of such a severity to be considered moderate. 

The Board also considered the Veteran's symptoms of diminished vibration sense in both lower extremities and decreased deep tendon reflexes. However, the Board notes that the Veteran is service-connected for peripheral neuropathy of the right and left upper and lower extremities. As these same symptoms have already been attributed to the Veteran's service-connected diabetes mellitus type II, separate or higher disability evaluation based on these symptoms is not warranted. See 38 C.F.R. § 4.119, Diagnostic Code 7913, NOTE (1) (2016); 38 C.F.R. § 4.14 (2016) (avoidance of pyramiding).

In short, the only objective evidence of a residual disability that is separate and distinct from other service-connected disabilities or that can be attributed to the Veteran's stroke is the bilateral intention tremor noted during the April 2010 VA examination, which has been found noncompensable. As such, the Board finds the Veteran's service-connected stroke meets the criteria to warrant a minimum 10 percent rating under Diagnostic Code 8008. Accordingly, a disability rating in excess of 10 percent for a stroke, which has been associated as a complication of the service-connected diabetes mellitus type II, must be denied. To the extent that an increased rating is being denied, the Board has also considered the doctrine of reasonable doubt. However, as the preponderance of the evidence is against the claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 C. Diabetes 

The Veteran's diabetes is currently rated under 38 C.F.R. § 4.119, Diagnostic Code 7913. Under Diagnostic Code 7913, a 20 percent rating is warranted when the diabetes requires the use of insulin or oral hypoglycemic agent, and a restricted diet. A 40 percent rating is warranted for diabetes that requires insulin, a restricted diet, and regulation of activities. A 60 percent rating is warranted for diabetes that requires insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. A 100 percent rating is warranted when diabetes requires more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. Id.

'Regulation of activities' has been defined as the situation where the Veteran has been prescribed or advised to avoid strenuous occupational and recreational activities. 61 Fed. Reg. 20,440, 20,446 (May 7, 1996) (defining 'regulation of activities,' as used by VA in Diagnostic Code 7913). Medical evidence is required to show that occupational and recreational activities have been restricted. Middleton v. Shinseki, 727 F.3d 1172 (Fed. Cir. 2013); Camacho v. Nicholson, 21 Vet. App. 360 (2007).

Complications of diabetes are evaluated separately unless they are part of the criteria used to support a 100 percent rating. Noncompensable complications are deemed part of the diabetic process under Diagnostic Code 7913. 38 C.F.R. § 4.119, Diagnostic Code 7913, Note (1) (2016).

During a November 2012 VA examination, the examiner noted a diagnosis of diabetes mellitus since 2002. The examiner indicated the Veteran's treatment includes restricted diet and insulin more than 1 injection per day. The examiner specifically indicated the Veteran's diabetes did not required regulation of activities as paret of medical management. The Veteran was noted to visit his diabetic care provider less than 2 times per month. He has not been hospitalized for episodes of ketoacidosis or hypoglycemic reactions in the past 12 months. The Veteran has no episodes of hypoglycemia in the past 12 months. There was no evidence of unintentional weight loss or progressive loss of strength attributed to diabetes. The examiner indicated the Veteran's diabetes does not impact his ability to work. 

The Veteran underwent another VA diabetes examination in May 2014. At that time, the claims file was reviewed, and the examiner noted a diagnosis of diabetes with an onset date in 1994. The examiner indicated that his treatment include managed restricted diet and insulin more than 1 injection per day. The examiner specifically noted there was no regulation of activities as part of medical management of diabetes. The Veteran was noted to visit his diabetic care provider less than 2 times per month. He has not been hospitalized for episodes of ketoacidosis or hypoglycemic reactions in the past 12 months. The Veteran has no episodes of hypoglycemia in the past 12 months. There was no evidence of unintentional weight loss or progressive loss of strength attributed to diabetes. The examiner indicated the Veteran's diabetes does not impact his ability to work. 

In a September 2014 substantive appeal, the Veteran asserted that he has been put on a regulation of activities by his VA doctor. He stated that the reason he has regulation of activities is due to weakness in his lower extremities from his diabetes. 

During an August 2016 VA examination, the examiner noted the claims file was reviewed. A diagnosis of diabetes was noted. The examiner also noted treatment consisting of insulin with one injection per day. The examiner specifically noted there was no regulation of activities as part of medical management of diabetes. The Veteran was noted to visit his diabetic care provider less than 2 times per month. He has not been hospitalized for episodes of ketoacidosis or hypoglycemic reactions in the past 12 months. The Veteran has no episodes of hypoglycemia in the past 12 months. There was no evidence of unintentional weight loss or progressive loss of strength attributed to diabetes. The examiner indicated the Veteran's diabetes does not impact his ability to work. The examiner indicated the Veteran's diabetes was mild and well-controlled. 

VA treatment records dated through August 2016 were reviewed and do not include any indication of regulation of activities due to diabetes by a doctor. 

The evidence of record does not reflect insulin or regulation of activities is required for control of diabetes mellitus as described for a higher 40 percent rating under Diagnostic Code 7913. See Tatum v. Shinseki, 23 Vet. App. 152 (2009) (holding that where a higher rating lists all the criteria for the lower evaluation and additional criteria for the increase, the criteria are conjunctive and must all be shown before an increase is warranted). The VA examiners stated that the Veteran had no restriction in his ability to perform activity due to diabetes, and VA and private treatment records do not otherwise reflect any restriction of activities for the control of diabetes mellitus. In fact, VA treatment records dated February 2013, April 2014, and October 2015, indicate that exercise was encouraged and the Veteran was involved in the MOVE program. 

Insomuch as the Veteran contends that a higher rating is warranted for diabetes mellitus 'requiring insulin, restricted diet, and regulation of activities,' the Board finds that evidence from VA and private treatment records and the VA examinations does not show that the Veteran's diabetes mellitus requires restriction of activities. The Board finds that the medical evidence of record specifically indicating that there has not been regulation of activities to be more probative that the Veteran's lay statements regarding him meeting this criteria. In this regard, the examiners of records have provided evidence that the Veteran has not such restrictions due to his diabetes. As a lay person, the Veteran does not have the medical expertise to opine that the diabetes is the cause of any such restrictions.

Given the evidence above, the Board does not find evidence of regulation of activities which would warrant a rating higher than 20 percent for diabetes mellitus under Diagnostic Code 7913. See 38 U.S.C.A. §§ 1155, 5107(b); Camacho, 21 Vet. App. at 360; 38 C.F.R. §§ 4.7, 4.119, Diagnostic Code 7913.

For these reasons, the Board finds that a preponderance of the evidence is against the appeal for a higher evaluation, in excess of 20 percent, for diabetes mellitus for the appeal period and the claim must be denied. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7.

In addition, the record does not support the assignment of different percentage evaluations during the time period on appeal and thus no staged rating is warranted.

 D. All Increased Rating Claims

The Board has considered whether referral for an extraschedular evaluation is warranted for the Veteran's disabilities. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2016). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as 'governing norms.' 38 C.F.R. 3.321 (b)(1) (related factors include 'marked interference with employment' and 'frequent periods of hospitalization '). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

Turning to the first step of the extraschedular analysis, the Board finds that all the symptomatology and impairment caused by the Veteran's disabilities are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The Veteran's diabetic retinopathy has no current manifestations; to the extent that it causes any visual impairment, the rating criteria specifically address such types of impairment, both in visual field and acuity. The Veteran's stroke residuals, to include bilateral intention tremor, has manifested by, at most, mild convulsive tic. The schedular rating criteria under Diagnostic Code 8103 (convulsive tic), contemplates a noncompensable percent rating for 'mild' symptoms. The Veteran's diabetes is manifested by insulin injections and restricted diet. The schedular rating criteria under Diagnostic Code 7913 consider insulin use and restricted diet. 

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. 'Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability.' 38 C.F.R. § 4.1. In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above, including the effect on his daily life. In the absence of exceptional factors associated with his disabilities, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321 (b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Further, and according to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to 'consideration [under 38 C.F.R. § 3.321 (b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations.' Referral for an extraschedular rating under 38 C.F.R. § 3.321 (b) is to be considered based upon either a single service-connected disability or upon the 'combined effect' of multiple service-connected disabilities when the 'collective impact' or 'compounding negative effects' of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities.

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria.



ORDER

Entitlement to a compensable rating for diabetic retinopathy is denied.

Entitlement to a rating higher than 10 percent for residuals due to stroke is denied.

Entitlement to a rating higher than 20 percent for diabetes mellitus type II is denied.



______________________________________________
Nathaniel J. Doan
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs