﻿Citation Nr: AXXXXXXXX
Decision Date: 01/08/19 Archive Date: 01/07/19

DOCKET NO. 181016-629
DATE: January 8, 2019

ORDER

The claim for a rating higher than 20 percent for diabetes mellitus, type II, with erectile dysfunction, and bilateral cataracts is denied.

The claim for an initial rating higher than 80 percent for diabetic renal disease (microalbumin) is denied.

The inferred claim for special monthly compensation (SMC) based on the need for regular aid and attendance or on account of housebound status is denied.

REMANDED

The claim for a rating higher than 30 percent for cognitive disorder (previously rated as anxiety neurosis) is remanded.

The claim for entitlement to an effective date earlier than February 17, 2012 for the award of an increased rating for cognitive disorder (previously rated as anxiety neurosis), is remanded.

The claim for whether new and relevant evidence has been received to reopen a claim for service connection for bilateral otitis externa is remanded.

FINDINGS OF FACT

1. Manifestations of the Veteran’s diabetes mellitus include poorly controlled blood sugar levels that require treatment with an oral hypoglycemic agent, insulin injection, and a restricted diet; there is no regulation of occupational or recreational activities.

2. The Veteran’s diabetic complications of erectile dysfunction and bilateral cataracts do not manifest to a compensable level.

3. The Veteran’s diabetic renal disease manifests microalbuminuria with a blood urea nitrogen (BUN) level not higher than 15mg% and a creatinine level not higher than 0.9mg%; it does not require dialysis, preclude more than sedentary activity, and does not result in markedly decreased function of the kidney or other organ systems, especially cardiovascular. 

4. The Veteran does not have a single service-connected disability rated as 100 percent disabling; he is not permanently housebound as a result of his diabetic renal disease.

5. The Veteran’s service-connected diabetic renal disease does not render him so helpless as to require the regular aid and attendance of another person to perform personal care functions of everyday living or to protect himself from the hazards and dangers incident to the daily environment.

CONCLUSIONS OF LAW

1. The criteria for a rating higher than 20 percent for diabetes mellitus, type II, with erectile dysfunction and bilateral cataracts are not met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321, 4.1-4.10, 4.79, 4.119, Diagnostic Codes 6027, 7522, 7913.

2. The criteria for an initial rating higher than 80 percent for diabetic renal disease (microalbumin) are not met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321, 4.1-4.10, 4.115a, Diagnostic Code 7541.

3. The criteria for SMC based on aid and attendance or at the housebound rate are not met. 38 C.F.R. §§ 1114 (s); 38 C.F.R. §§ 3.350, 3.352.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran has verified active duty service from August 1968 to August 1970. This case comes before the Board of Veterans’ Appeals (Board) on appeal from a September 2013 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO).

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The claim for entitlement to service connection for glaucoma, to include as secondary to service-connected diabetes mellitus, will be considered in a separate decision of the agency of original jurisdiction (AOJ).

As discussed in further detail in the Remand portion of this decision, the claim for entitlement to an effective date earlier than February 17, 2012 for the award of an increased rating for cognitive disorder (previously rated as anxiety neurosis) on the basis of clear and unmistakable error (CUE) in a March 1971 rating decision is referred to the AOJ for adjudication.

INCREASED RATING

Disability evaluations are determined by comparing a Veteran’s present symptomatology with criteria set forth in VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran’s entire history is reviewed when making disability ratings. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, the regulations do not give past medical reports precedence over current findings. Id. When the question for consideration is the propriety of the initial disability rating assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of “staged rating” is required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). Staged ratings are also appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

1. Entitlement to a rating higher than 20 percent for diabetes mellitus, type II, with erectile dysfunction and bilateral cataracts.

Service connection for diabetes mellitus associated with exposure to herbicide agents was awarded in an April 2008 rating decision. An initial 20 percent evaluation was assigned effective June 13, 2007. The September 2013 rating decision on appeal continued the 20 percent evaluation and granted service connection for erectile dysfunction and cataracts as noncompensable (0 percent) complications of diabetes mellitus. Thus, the Veteran’s diabetes mellitus with associated erectile dysfunction and bilateral cataracts is currently rated as 20 percent disabling. The Veteran contends that higher ratings are warranted as his diabetes has worsened and causes other chronic disabilities.

The Veteran’s diabetes is rated 20 percent disabling under 38 C.F.R. § 4.119, Diagnostic Code 7913. This diagnostic code provides that when diabetes mellitus requires insulin and a restricted diet, or an oral hypoglycemic agent and a restricted diet, a 20 percent evaluation is merited. Id. When insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) are required, it is evaluated as 40 percent disabling. Id. Diabetes mellitus requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately rated, is rated 60 percent disabling. Id. Diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulation of activities, with episodes of ketoacidosis or hypoglycemic reactions, requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. Id. Note (1) following the rating criteria provides that compensable complications of diabetes mellitus are rated separately unless they are used to support a total disability rating. Id. at Note (1). 

The criteria for ratings higher than 20 percent for diabetes mellitus are conjunctive not disjunctive—i.e., there must be insulin dependence and restricted diet and regulation of activities. “Regulation of activities” is defined by Diagnostic Code 7913 as the “avoidance of strenuous occupational and recreational activities.” Medical evidence is required to show that occupational and recreational activities have been restricted. Camacho v. Nicholson, 21 Vet. App. 360 (2007). 

After review of the evidence of record, the Board finds that the Veteran’s diabetes mellitus does not meet the criteria associated with an increased evaluation. Although the record establishes that the Veteran’s diabetes mellitus is treated with an oral hypoglycemic agent, insulin, and a restricted diet, the evidence does not establish regulation of activities. Private and VA treatment records do not document any instance where the Veteran’s diabetic care providers advised him to avoid strenuous occupational and recreational activities due to diabetes mellitus. Additionally, VA examiners in June 2012 and April 2013 found that the Veteran’s diabetes mellitus was managed by medication and a restricted diet alone. The April 2013 VA examiner also specifically noted that the Veteran’s diabetes mellitus did not require regulation of activities. 

The Board has considered the Veteran’s lay statements, but observes that he has not provided any specific statements in support of his claim for an increased rating for diabetes mellitus. He maintains that a higher rating is warranted based on the identification of associated erectile dysfunction and cataracts, but has not provided any statements describing his activities of daily living or the ways in which his diabetes mellitus may limit them. In any event, the award of an increased rating for diabetes requires medical evidence indicating that the Veteran’s occupational and recreational activities are regulated due to the condition. Camacho, supra. None of the Veteran’s medical providers or VA examiners have identified the regulation of activities due to diabetes and the competent evidence therefore does not establish this aspect of an increased rating. 

The record also does not establish that the Veteran’s disability meets the other criteria associated with an increased rating under Diagnostic Code 7913. The Veteran has consistently denied experiencing episodes of ketoacidosis or hypoglycemic reactions requiring hospitalization. Review of VA treatment records demonstrates that he has not visited his diabetic care provider twice a month. In June 2012, his VA primary care physician found that the Veteran’s diabetes was not well-controlled on oral medication alone and prescribed insulin injections in the morning and evening. The Veteran’s diabetes mellitus therefore requires more than one daily injection of insulin, as included in the criteria for a 100 percent rating under Diagnostic Code 7913, but does not manifest symptoms of the severity contemplated by a total schedular rating. At no time during the claims period has the Veteran required regulation of activities or hospitalization due to diabetes mellitus, and he does not manifest a progressive loss of weight or strength. In short, while the Veteran may manifest some of the criteria associated with a schedular rating in excess of 20 percent, as noted above, the criteria for ratings in excess of 20 percent for diabetes mellitus are conjunctive not disjunctive. Thus, an increased rating under Diagnostic Code 7913 is not warranted. 

The note following Diagnostic Code 7913 provides that compensable complications of diabetes mellitus are rated separately unless they are used to support a total disability rating. 38 C.F.R. § 4.119, Diagnostic Code 7913. The Veteran’s service-connected diabetes mellitus includes complications of cataracts and erectile dysfunction. Regarding the Veteran’s cataracts, VA treatment records show that the Veteran had a right cataract removed in approximately 2011 with a replacement intraocular lens (pseudophakia). A preoperative cataract is also present in the left eye. The Veteran has numerous other nonservice-connected eye conditions, including glaucoma, pigmentary retinal degeneration, and retinal disease. Although the Veteran experiences some loss of vision, the July 2013 VA examiner specifically found that the Veteran’s decrease in visual acuity and visual impairment were not due to cataracts; rather, it was due to glaucoma and retinal disease. These findings are supported by the Veteran’s VA optometry records, which identify glaucoma, a history of retinal detachment, and refractive errors with presbyopia as the cause of the Veteran’s vision problems. Cataracts (either preoperative or postoperative) are evaluated under Diagnostic Code 6027 based on visual impairment. 38 C.F.R. § 4.79. As the Veteran has not experienced any visual impairment due to cataracts during the claims period and the condition has not manifested to a compensable level, a separate evaluation is not warranted. 

The Veteran’s erectile dysfunction has also not manifested to a compensable level. Erectile dysfunction is not specifically listed in the Rating Schedule and is rated by analogy to deformity of the penis with loss of erectile power. 38 C.F.R. § 4.115b, Diagnostic Code 7522. This diagnostic code provides for a 20 percent rating. Although the Veteran experiences erectile dysfunction due to diabetes mellitus, there is no evidence he manifests any physical deformity of the penis. The Veteran declined a physical examination of his penis at the April 2013 VA examination and there is no indication in his medical records that he manifests any deformity of the penis. Special monthly compensation from VA based on the loss of use of a reproductive organ has been granted due to the Veteran’s service connected erectile dysfunction. As the erectile dysfunction is not accompanied by any deformity, a separate compensable rating is not warranted.

Finally, while there may have been day-to-day fluctuations in the manifestations of the Veteran’s service-connected diabetes mellitus, the evidence shows no distinct periods of time during the appeal period when the Veteran’s service-connected diabetes mellitus varies to such an extent that a rating greater or less than the initial 20 percent assigned in the July 2005 rating decision is warranted. Fenderson v. West, 12 Vet. App. 119, 126 (1999). 

2. Entitlement to an initial rating higher than 80 percent for diabetic renal disease (microalbumin).

Service connection for diabetic renal disease (microalbumin) was granted in the September 2013 rating decision on appeal. An initial 80 percent rating was assigned effective February 17, 2012. The Veteran contends that a higher rating is warranted as his renal disease results in hypertension and other cardiovascular impairment. 

Conditions of the kidneys are generally rated as renal dysfunction under 38 C.F.R. § 4.115a. Under this criteria, a persistent edema and albuminuria with BUN 40 to 80mg%; or, creatinine 4 to 8mg%; or, generalized poor health characterized by lethargy, weakness, anorexia, weight loss, or limitation of exertion warrants an 80 percent rating. A 100 percent rating is assigned with renal dysfunction requiring regular dialysis, or precluding more than sedentary activity from one of the following: persistent edema and albuminuria; or, BUN more than 80mg%; or, creatinine more than 8mg%; or, markedly decreased function of kidney or other organ systems, especially cardiovascular. 38 C.F.R. § 4.115a. 

The Veteran’s laboratory findings do not establish that his service-connected renal disease most nearly approximates a total rating based on kidney dysfunction. Laboratory testing performed at the VA Medical Center (VAMC) throughout the claims period does not demonstrate BUN or creatinine levels consistent with a 100 percent rating based on renal dysfunction. The Veteran’s creatinine level was consistently 0.9mg% and his BUN was never higher than 15mg%; these test results are clearly not consistent with a total rating under 38 C.F.R. § 4.115a. Additionally, the Veteran’s condition does not require dialysis and does not require continuous medication. There is no evidence of a marked decrease in kidney function due to the service-connected microalbumin and the April 2013 VA examiner found there was no actual sign of renal dysfunction due to diabetes mellitus. 

The Veteran contends that a maximum 100 percent rating is warranted for renal dysfunction as his condition causes hypertension and a marked decrease in his cardiovascular system. The competent evidence does not establish a relationship between the Veteran’s renal disease and hypertension or any other cardiovascular condition. Although the Veteran has hypertension, none of his medical providers have associated it with service-connected diabetes and/or renal disease, and the April 2013 VA examiner found that the Veteran’s did not have hypertension and heart disease due to or caused by renal disease. The Board finds that this competent medical evidence outweighs the Veteran’s lay statements and finds that the Veteran’s renal disease does not result in hypertension or a decrease in cardiovascular functioning. 

The Board has considered whether there is any other schedular basis for granting a higher rating for the service-connected diabetic renal disease, but has found none. In addition, the Board has considered the doctrine of reasonable doubt but has determined that it is not applicable because the preponderance of the evidence is against the claim. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 4.7, 4.21.

3. Entitlement to SMC based on the need for regular aid and attendance or on account of housebound status.

The Board finds that the Veteran has raised an inferred claim for SMC. On his May 2018 RAMP election form, the Veteran reported that his diabetic renal disease has left him housebound and in need of regular aid and attendance. The Veteran’s claim was developed under RAMP and the AMA framework, Pub. L. No. 115-55, 131 Stat. 1105 (2017). Because he selected the Direct Review lane, the Board’s decision is based on a review of the evidence of record at the time of the Agency of Original Jurisdiction (AOJ) decision. See AMA at § 2(w)(1), 131 Stat. 1105, 1114 (2017). However, the AMA does not prevent the Board from considering argument that was submitted outside of the evidence window. Thus, the Veteran’s statements on the May 2018 RAMP election form are sufficient to raise an inferred claim for SMC. See Akles v. Derwinski, 1 Vet. App. 118, 121 (1991) (entitlement to SMC is part of an increased rating claim, and VA should consider the issue when it is reasonably raised by the record, regardless of whether a veteran has specifically pled it).

SMC is warranted if a veteran is helpless or so nearly helpless as to require the regular aid and attendance of another person. 38 C.F.R. §§ 3.350(b)(3), 3.351(b). Aid and attendance is appropriate if the record establishes a factual need for the benefit under the criteria set forth in 38 C.F.R. § 3.352(a). 

After review of the record, the Board finds that the Veteran’s diabetic renal disease has not rendered him housebound. There is absolutely no indication that his renal disease has caused him to remain substantially confined to his dwelling and the immediate premises. See 38 C.F.R. § 3.350(i)(2). The April 2013 VA examiner also specifically found that the Veteran’s diabetic renal disease did not result in any impairment or affect the Veteran’s ability to work. The Veteran has provided only the vaguest of argument in support of his claim, and has not indicated any specific level of impairment that indicates he is housebound due to diabetic renal disease. In addition, the Veteran does not meet the statutory requirements for the housebound SMC benefit as he is not in receipt of a single service-connected disability rated at 100 percent. 38 C.F.R. § 3.350(i)(1). 

The Board will now turn to whether the Veteran requires the aid and attendance of another person. The criteria to establish a factual need for aid and attendance are listed under 38 C.F.R. § 3.352(a). Aid and attendance is warranted if the following criteria are met: the inability of a claimant to dress or undress herself, or to keep herself ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (this will not include the adjustment of appliances which normal persons would be unable to adjust without such aid, such as supports, belts, lacing at the back, etc.); the inability of a claimant to feed herself through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his daily environment.

As with the housebound claim above, there is no evidence in the record establishing that the Veteran meets the factual criteria for an award of SMC based on aid and attendance. The Veteran’s contentions in this claim are set forth in the May 2018 statement where he merely reports that he requires aid and attendance due to diabetic renal disease. He does not provide any statements describing his level of impairment or the reasons why he requires the care of another. None of his treatment records or physical examinations indicate that he is unable to perform his activities of daily living or protect himself from the hazards and dangers of his daily environment. The April 2013 VA examiner also specifically found that the Veteran’s diabetic renal disease did not result in any impairment to employment. In short, the record contains no lay or medical evidence establishing that the Veteran requires aid and attendance and the Board cannot conclude that the Veteran’s diabetic renal disease has resulted in a level of impairment that requires SMC. 

Therefore, the Board finds that the Veteran is not entitled to SMC based on being housebound or on the need for regular aid and attendance of another person. The inferred claim for SMC is accordingly denied. 

REASONS FOR REMAND

The Board finds that a remand is necessary with respect to the remaining claims on appeal. In December 2017, the Veteran elected to participate in RAMP, VA’s test program for the implementation of the AMA. Because of the Veteran’s choice to participate in RAMP, his claims on appeal were withdrawn from the previous appeals process (the “Legacy” process) and were readjudicated by the AOJ in a March 2018 rating decision. However, the March 2018 rating decision did not properly address the Veteran’s claims for an increased rating and earlier effective date for the service-connected cognitive disorder. 

The Veteran was awarded service connection for an acquired psychiatric disorder, characterized as anxiety neurosis, in a March 1971 rating decision. An initial noncompensable (0 percent) evaluation was assigned effective August 27, 1970 with a temporary 100 percent evaluation assigned from November 17, 1970 to December 31, 1970. Thereafter, from January 1, 1971, a noncompensable evaluation was again assigned. The September 2013 rating decision (issued in response to the Veteran’s initial appeal under the Legacy appeals process) recharacterized the service-connected psychiatric disorder as a cognitive disorder (previously rated as anxiety neurosis) and assigned an increased 30 percent evaluation from February 17, 2012. The Veteran disagreed with the disability rating assigned the cognitive disorder, as well as the effective date assigned the increased rating. Additionally, in July 2012, the Veteran filed a claim for CUE in the March 1971 rating decision arguing that a compensable rating should have been assigned for his anxiety neurosis from January 1, 1971. The Veteran’s contentions regarding CUE were reiterated on the December 2012 notice of disagreement. 

Despite the Veteran’s clear allegations of CUE, the March 2018 rating decision issued under the RAMP procedures did not address the Veteran’s CUE claim. The Board has referred the CUE aspect of the Veteran’s earlier effective date claim to the AOJ for adjudication. However, the earlier effective date claim before the Board is inextricably intertwined with the CUE claim and a final decision cannot be rendered until the Board has jurisdiction of both the CUE and earlier effective date issues. A remand of the earlier effective date claim is therefore necessary to allow for the adjudication of the CUE claim. The claim for an increased rating for the service-connected cognitive disorder is also remanded as it is inextricably intertwined with the claim for an earlier effective date. The Board is remanding these claims as the failure to properly adjudicate them constitutes a pre-decisional duty to assist violation by the AOJ.

The Board has also identified another duty to assist error that occurred before the March 2018 adjudication of the claim to reopen service connection for bilateral otitis externa. The record contains a DD-214 (Certificate of Release or Discharge from Active Duty) indicating that the Veteran served on active duty with the United States Navy from September 1973 to September 1975. VA attempted to verify this period of active service and obtain the Veteran’s service records from the National Personnel Records Center (NPRC) in January 1976. The January 21, 1976 response from the NPRC is ambiguous regarding whether the Veteran had a second period of active duty service and whether any service treatment and personnel records are available. The Board finds that additional efforts must be made to verify the Veteran’s active service and obtain any outstanding service records.

The matters are REMANDED for the following action:

1. Verify whether the Veteran served on a period of active duty service from September 1973 to September 1975 with the US Navy. Obtain the Veteran’s complete service personnel records and service treatment records from this period of service, if verified.

2. After adjudicating the Veteran’s pending CUE claim, issue a rating decision adjudicating the following issues under the provisions of RAMP:

(a) Entitlement to an effective date earlier than February 17, 2012 for the award of an increased rating for cognitive disorder (previously rated as anxiety neurosis); and,

(b) Entitlement to a rating higher than 30 percent for cognitive disorder (previously rated as anxiety neurosis).

 

M. H. HAWLEY

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Riley, Counsel