# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-1394

MIGUEL A. CAMACHO, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    July 6, 2007  )

*Ronald L. Smith,* of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Mary Ann Flynn*, Principal Deputy Assistant General Counsel; and *Davin L. Quinn*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and LANCE, *Judges*.

MOORMAN, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed an opinion concurring in part and dissenting in part.

MOORMAN, *Judge*:  The appellant, veteran Miguel A. Camacho, appeals through counsel a February 2, 2005, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an initial disability rating in excess of 20% for diabetes mellitus (diabetes).  The parties each filed briefs, and the appellant filed a reply brief.  This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  The Board found that the only criterion not established that is necessary for the next higher disability rating, i.e., 40% rating, is whether the evidence demonstrated that the appellant is required to "regulate his activities" within the meaning of 38 C.F.R. 4.119, Diagnostic Code (DC) 7913 (2004).  On appeal, we must determine whether a decision by the appellant's employer to disqualify him from driving other individuals at work constitutes a "regulation of activities" within the meaning of DC 7913. Deferring to VA's interpretation of DC 7913, we hold that in order for a claimant to be entitled to

a 40% disability rating, the evidence must show that it is medically necessary for a claimant to avoid strenuous occupational and recreational activities. Because the evidence of record does not establish that it was medically necessary for the appellant to regulate his activities due to his service-connected diabetes within the meaning of DC 7913, the Court will affirm the February 2005 Board decision.

## I. FACTS

Mr. Camacho served on active duty in the U.S. Army from August 1966 to August 1969. Record (R.) at 13. In December 2000, he filed a claim for service connection for diabetes mellitus. R. at 27. An October 2001 VA examination report noted that he was then currently "taking insulin twice daily, was on a 1500-calorie diabetic diet, and does exercises every day except Thursday." R. at 35. The physician gave the following impression: "Diabetes mellitus type II, insulin dependent. Currently, his blood sugar ranges from 70 to 200. His blood sugar on 10-19-01 was 119, B[UN] 15, [c]reatinine 1.2, albustix negative, H[gb] alc is 8.4, his diabetes is not well controlled." R. at 36.

In December 2001, a VA regional office (RO) awarded service connection for diabetes mellitus and assigned a disability rating of 20%. R. at 75-82. Mr. Camacho timely appealed. He submitted an August 2004 letter from his employer, the Department of Veterans Affairs, Medical Center, North Chicago, Illinois (VAMC). The letter stated: "Miguel Camacho is a Motor Vehicle Operator at North Chicago, VA. Part of his duties includes transporting patients. Recently a Motor Vehicle Operator physical was performed. Due to his insulin dependent diabetes, he is disqualified from driving patients." R. at 113. The letter was signed by "Stephanie D. Angelo MSN [(Master of Science in Nursing)], NP [(Nurse Practitioner)], Employee Health Clinic Manager," at the VAMC. R. at 113.

Progress notes from the VAMC dated in October 2004 included the following medical assessment of Mr. Camacho: "Type 2 diabetes, uncontrolled with diabetic cardiovascular complications. [O]ne hypoglycemic reactions [sic] before lunch only on days with increased physical activity or when he takes a late lunch[,] otherwise blood sugars are high most of the time specially in am." R. at 116. An addendum from the physician noted the following: "Recently, [a] question has been raised about the safety. I would defer it to [m]edical center administration

guidelines. Although, it would be safe if [he] works within the medical center without the responsibility to act as Van driver." R. at 117. In March 2004, progress notes reported: "[Mr. Camacho] exercises maybe three days per week and [he] cannot exercise more than that because of his knee problems and sometimes he says his knee swells up. He also works full time and it is very hard for him to exercise." R. at 120. The notes also report that the examiner advised Mr. Camacho to exercise 6-7 days per week. *Id.*

At a video-conference hearing before the Board in November 2004, Mr. Camacho testified under oath that his diabetes prevents him from doing certain activities. R. at 143-44. He can no longer climb stairs, work as a gardener, or do ground maintenance. *Id.* He stated: "[B]ecause I'm on insulin, I can't even do my job no more. I can't drive, 'cause they're scared I might pass out which I haven't, you know yet." R. at 143; *see* R. at 146 ("I can't transfer patients because of my diabet[es]. They seem to think I might pass out."). He testified that he no longer drives a van for the VA hospital and VA now has him working "with fire and safety." R. at 147. He stated that he feels that VA is being discriminatory towards him. R. at 151.

In February 2005, the Board denied Mr. Camacho's claim for an initial disability rating in excess of 20% for diabetes mellitus under 38 C.F.R. § 4.119, DC 7913. The Board found that the record did not show that his activities had been regulated. R. at 8. Specifically, the Board found that he met only two of the three criteria for a 40% disability rating: "Although the record reflected that the veteran is required to take daily insulin injections and that he is on a restricted diet, the record does not show that his activities are restricted." R. at 8. As to his employer's decision to restrict his driving, the Board characterized it as a decision of his supervisor (R. at 6) and found that "[t]he record does not indicate that any medical provider has stated that the veteran should not drive" (R. at 8).

On appeal, the appellant argues that his disqualification by his employer from driving at work constitutes a "regulation of activities" within the meaning of DC 7913, that this is a question of law for which this Court should apply the de novo standard of review, and that he is entitled to a 40% disability rating. Appellant's Brief (Br.) at 10-12, Reply Br. at 1-2. The Secretary argues that the phrase "regulation of activities" is defined in DC 7913 to mean "avoidance of strenuous occupational and recreational activities." 38 C.F.R. § 4.119, DC 7913 (defining term within criteria for a 100% rating). Secretary (Sec'y) Br. at 6. The Secretary asserts that "regulation of activities"

3

means that "the evidence must show that the claimant's activities, both occupational and recreational, require that he avoid strenuous activity." Sec'y Br. at 6. The Secretary also argues that there is no evidence that any competent medical provider has indicated that the appellant's diabetes is of such severity that he should curtail his activities such as to avoid strenuous activity. *Id*. The Secretary contends that the appellant's "employer's decision to disqualify him from holding a position that requires driving does not equate to a restriction as provided under DC 7913." *Id.* at 7. In reply, the appellant agrees with the Secretary's assertion that the definition of "regulation of activities" provided under the 100% disability rating in DC 7913 applies to the 40% disability rating. Reply Br. at 2. He argues that even if he does not fully meet the third criterion for the 40% rating, he should be evaluated 40% disabled because his disqualification by his employer from driving patients results in a serious regulation of his employment and exceeds the requirements for the 20% disability rating. Reply Br. at 3 (citing 38 C.F.R. § 4.7, 4.21 (2005)).

## II. ANALYSIS

The U.S. Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference by the courts. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200 (2001) (cited in *Smith v. Nicholson*, 451 F.3d 1344, 1349 (2006)). When a court is interpreting an administrative regulation, it "must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (quoted in *Smith*, 451 F.3d at 1350). The administrative construction becomes "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.*

Applying these principles to the instant case, the Court concludes that the Secretary's interpretation of DC 7913 is not plainly erroneous or inconsistent with the regulation. The Secretary's interpretation of his own regulation, DC 7913, is entitled to substantial deference and the Court will so treat it. A 20% disability rating for diabetes mellitus is warranted when the diabetes requires insulin or an oral hypoglycemic agent and a restricted diet. A 40% disability rating is warranted when the diabetes requires insulin, restricted diet, and regulation of activities. 38 C.F.R. § 4.119, DC 7913 (2006). The Secretary has defined "regulation of activities" in DC 7913 to mean "avoidance of strenuous occupational and recreational activities." 38 C.F.R. § 4.119, DC

4

7913 (defining term within criteria for a 100% rating). Both parties agree that this definition applies to the "regulation of activities" criterion listed for the 40% rating for DC 7913 in the Schedule for Rating Disabilities. The Secretary maintains that his interpretation of DC 7913 regarding the "regulation of activities" criterion requires that "the evidence must show that the claimant's activities, both occupational and recreational, require that he avoid strenuous activity." Sec'y Br. at 6; Reply Br. at 2. Accordingly, a 40% disability rating under DC 7913 is assigned to a claimant who demonstrates by evidence that, inter alia, he or she is required to avoid strenuous occupational *and* recreational activities. As discussed below, the restriction on both types of activities is a means of showing the severity of the disability.

The first question then that must be addressed is whether medical evidence is required to show that occupational and recreational activities have been restricted. The regulatory history for DC 7913 supports the view that, in order to entitle a claimant to a disability rating greater than 20%, it must be shown that a regulation of these activities is medically necessary. 61 Fed. Reg. 20,440 (May 7, 1996). In 1993, VA proposed a revision for DC 7913 so that the degree of impairment is determined according to how well the disease is controlled. 58 Fed. Reg. 5691, 5693 (Jan. 22, 1993). VA proposed "regulation of activities," not further defined, as a criterion at the 100%, 60%, and 40% levels. *Id.* At that time, the phrase "avoidance of strenuous occupational and recreational activities" was expressly listed as a criteria for the 40% disability rating for diabetes. VA proposed to delete the phrase "since it does not substantially clarify the meaning of careful regulation of activities." *Id.* In implementing the final rule, however, VA decided to retain the phrase. 61 Fed. Reg. at 20443-43. VA stated that one commenter felt that the proposed deletion of the language made the meaning less clear. VA stated that it agreed with the commenter and was retaining the definition that had been used in the previous rating schedule. *Id.* VA also noted that the same commenter had said that it is meaningless to include the limitation of activities as a factor in evaluating diabetes mellitus since information of this type is not provided in a VA examination. VA disagreed and stated: "VA Physician's Guide for Disability Evaluation Examinations is meant to insure that all necessary tests are performed and that all findings are provided for diagnosis and/or evaluation to meet the specific requirements of the Schedule for Rating Disabilities and related programs. . . . The Guide will be revised to provide detailed guidelines for examinations reflecting the revised provisions of the rating schedule. It is incumbent upon the rating board to return to the

5

examiner reports that lack information necessary to apply the provisions of the rating schedule (*see* § 4.2 of 38 C.F.R.)." 61 Fed. Reg. at 20444.

The *VA Physician's Guide* was revised and replaced by the *VA Clinician's Guide*. The *VA Clinician's Guide,* like the *VA Physician's Guide*, is a guide to VA doctors providing generalized direction for the proper conduct of disability examinations. In paragraph 16.5 of the *VA Clinician's Guide*, it states that an evaluation of diabetes mellitus must "[i]nclude any restrictions of diet or physical activities and any weight loss." U.S. VETERANS CLINICIAN'S GUIDE, Ch. 16, para. 16.5. Accordingly, any "regulation of activities" is a matter that is to be included in the physician's assessment of a claimant seeking VA disability compensation. *See* 61 Fed. Reg. at 20444; 38 C.F.R. § 4.1 (2006) ("For the application of this [rating] schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition."); 38 C.F.R. § 4.10 (2006) ("The basis of disability evaluations is the ability ... to function under the ordinary conditions of daily life including employment"; medical examiner must furnish "full description of the effects of disability upon the person's ordinary activity"). The Court holds that medical evidence is required to support this criterion of a 40% disability rating – regulation of activities.

The next question for the Court is whether there is a plausible basis for the Board's findings that "there is no medical evidence that the veteran's activities are restricted" and, therefore, a higher initial disability rating of 40% is not warranted under DC 7913. R. at 8; *see Johnston v. Brown*, 10 Vet.App. 80, 84 (1997) (applying established caselaw that degree of disability under the rating code is a finding of fact subject to the "clearly erroneous" standard of review by this Court); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) (holding that when Court applies the "clearly erroneous" standard, Court may not reverse Board's finding of fact if, after Court reviews the record in its entirety, the finding is supported by a plausible basis). This question turns on whether there is medical evidence of record that supports a finding that the appellant has been instructed to avoid "strenuous occupational and recreational activities." The appellant relies solely on his employer's August 2004 letter as sufficient evidence to show that his diabetes requires "regulation of activities." The letter states: "Due to his insulin dependent diabetes, he is disqualified from driving patients." R. at 113. On this point, the Board recognized that the appellant had been barred from driving

patients at his job due to his diabetes mellitus. R. at 8. The Board, however, found that "this was done as a safety precaution for the patients." *Id.* The Board stated:

> The record does not indicate that any medical provider has stated that the veteran should not drive. None of the VA outpatient records or examination reports have indicated that the veteran's own personal activities are restricted due to diabetes mellitus. Throughout the medical evidence the veteran has been encouraged to exercise more regularly. Since there is no medical evidence that the veteran's activities are restricted, a higher initial rating of 40 percent [ ] is not deemed warranted under DC 7913. The preponderance of the evidence is against the claim and there is no doubt to be resolved.

*Ibid.*

There is a plausible basis for the Board's determination that there is no medical evidence that the appellant's activities are restricted. The August 2004 letter represents the appellant's employer's decision to disqualify him from his duties as a driver for patients at the VAMC based on his insulin dependence. Although this letter is signed by a nurse practitioner, on its face, it is not based on an individualized assessment of the appellant's condition. Rather the Board found that the nurse made these statements in her capacity as the appellant's supervisor rather than in the capacity of a medical professional diagnosing the appellant. R. at 6. Hence, the employer's decision is not competent medical evidence that the appellant's diabetes actually makes him unsafe to drive. *See LeShore v. Brown*, 8 Vet.App. 406, 409 (1995) (mere repetition of a medical assertion from another source by a medical professional does not amount to a competent medical opinion). Instead, the letter in the record indicates that the appellant was disqualified from driving patients as a policy decision based solely on the fact that he is insulin dependent. R. at 113. Because the disqualification is not based on a medical assessment of the appellant's individual circumstances and symptoms of diabetes, it is not competent medical evidence concerning the severity of the appellant's disability. Accordingly, this evidence does not meet the requirement of DC 7913 that the appellant's diabetes requires that he avoid "strenuous occupational and recreational activities."

The Court notes that the record does contain a progress note from the VAMC dated in August 2004 that states that the appellant's diabetes is uncontrolled with diabetic cardiovascular complications and that the physician noted that a question "had been raised" about the "safety" of the appellant's work as a van driver for the VAMC R. at 117. However, the physician stated: "I would defer it to [m]edical center administrative guidelines. Although it would be safe if [he] works

7

within the medical center without the responsibility to act as Van driver." R. at 117. Hence, the doctor clearly stated that he was not offering an opinion on the appellant's ability to drive, but rather was "deferring" to the safety policy imposed by the appellant's employer. In addition, the doctor was not making an assessment that the appellant's condition required that he not drive as a means to control his diabetes or that driving would aggravate his condition. Accordingly, the medical evidence is consistent with the Board's finding that there is no medical evidence that the appellant should not drive due to the severity of his diabetes. Notably, the appellant, who is represented by counsel, is not arguing that, pursuant to 38 C.F.R. § 4.1 or § 4.10, the VA medical examination report was inadequate or that there was a violation of the duty to assist under 38 U.S.C. § 5103A, or even that the Board erred in not returning the report, under 38 C.F.R. § 4.2, as inadequate for evaluation purposes.

To the extent that the appellant's employer has barred him from driving without a sound medical basis for doing so, his remedy, if any, lies elsewhere. Congress has authorized the Secretary to pay disability compensation for actual disabilities caused by a veteran's service. *See* 38 U.S.C. §§ 1110, 1131. Congress has provided remedies under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796l, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, for discrimination by an employer based on an unfounded perception that a person suffers from a disability. *See Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273, 279 (1987) (explaining that a person who is perceived as disabled is just as entitled to full protection under these acts against discrimination as a person who actually is disabled). However, neither the Board nor the Court is authorized to hear actions brought under those statutes.

As to limitations other than driving, the appellant does not argue that a medical provider has indicated that his diabetes is of such severity that he should curtail his activities such as to avoid strenuous activity. The appellant does not refute the Secretary's argument that there is none. On the contrary, there is evidence that the appellant was being encouraged to be more physically active, such as the March 2004 VAMC progress notes that advised the appellant to exercise 6-7 days per week. R. at 120. At that time, the appellant had informed the physician that he exercises approximately 3 days per week. The physician was, therefore, advising the appellant to increase his weekly exercise program. Hence, the record contradicts any assertion that the appellant was being advised to limit his strenuous activity.

8

Finally, the appellant's argument that, pursuant to 38 C.F.R. § 4.21, he "is not required to demonstrate that he meets all criteria for the next higher rating" lacks merit. Reply Br. at 3. He asserts that he "unquestionably satisfies two of the three criteria for the 40-percent rating." *Id.* at 3. In light of the conjunctive "and" in the criteria for a 40% disability rating under DC 7913, all criteria must be met to establish entitlement to a 40% rating. *See*, *e.g.*, *Watson v. Dep't of the Navy*, 262 F.3d 1292, 1299 (Fed. Cir. 2001) (noting that inclusion of conjunctive "and" clearly indicates that all three criteria in 5 C.F.R. §§ 831.902 and 842.802 must be demonstrated); *Heuer v. Brown*, 7 Vet.App. 379, 385 (1995) (holding that criteria expressed in the conjunctive are connected by "and"); *Malone v. Gober*, 10 Vet.App. 539 (1997) (construing "and" as conjunctive in a statute); *cf. Johnson v. Brown*, 7 Vet.App. 95, 97 (1994) (holding that "or" in the rating criteria shows that each is an independent basis for granting that rating). Given the clearly conjunctive structure of the language used in specifying the criteria for a 40% disability rating under DC 7913, § 4.21 has no application here. The cases in which the Court has indicated that § 4.21 applies are those in which the diagnostic criteria are not clearly joined in the conjunctive. *See Johnson v. Brown*, 9 Vet.App. 7 (1996) (involving the 20% disability rating under 38 C.F.R. § 4.71a, DC 5295 (1995) – "With muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in standing position") (1995)); *Quarles v. Derwinski*, 3 Vet.App. 129 (1992) (involving the same diagnostic code); *Dyess v. Derwinski*, 1 Vet.App. 448 (1991) (involving 38 C.F.R. § 4.71a, DC 5276) (1990)). Moreover, if taking insulin and having a restricted diet were sufficient to support a 40% disability rating without restriction of activities, then there would be no reason for "insulin and restricted diet" to be one of the two ways to qualify for a 20% disability rating. 38 C.F.R. § 4.119, DC 7913. Therefore, the appellant's argument must be rejected because it would render part of DC 7913 meaningless. *See Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000) ("Canons of construction . . . require us to give effect to the clear language of a [regulation] and avoid rendering any portions meaningless or superfluous.").

Although our colleague agrees that the criteria established in DC 7913 for a 40% disability rating for diabetes are conjunctive and, therefore, that a claimant must demonstrate not only that a claimant's diabetes requires insulin and a restricted diet, *but also* that the diabetes requires that the claimant's activities be regulated, our colleague's analysis essentially reads this latter requirement out of the Secretary's regulation. Based on our colleague's approach, anyone on insulin who works

as a "Van driver" at the hospital where Mr. Camacho works automatically meets the additional requirement of a restriction of activities regardless of the severity of the diabetes. In addition, although our colleague agrees that a claimant's activities be regulated such that he avoid strenuous occupational *and* recreational activities, he equates, without a basis, an employer's guidelines that relate solely to occupational activities with restrictions on an employee's personal or recreational activities.

To the extent there is any "incorporation" of the employer's guidelines into the VA medical examiner's report, as suggested by our colleague, those guidelines and the VA medical examiner's report do not discuss any restrictions on Mr. Camacho's recreational or own personal activities, such as his ability to drive himself. The VA medical report specifically refers only to Mr. Camacho's duties as a "Van driver" for the hospital. R. at 117. Pursuant to those guidelines, Mr. Camacho's employer in the August 2004 letter, disqualified him from his duties as a driver for patients based on his insulin dependence. The Board did address this employer-imposed restriction and found that it was done "as a safety precaution for the patients." R. at 8. The employer specifically imposed the restriction on his occupational activities for the safety of the patients; the employer did not express any concern for the safety of Mr. Camacho as he was not precluded from driving his own vehicle on or off hospital property. R. at 113 (August 2004 letter from employer stating: "Due to his insulin dependent diabetes, he is disqualified from driving patients."). Moreover, relying exclusively on the August 2004 letter from his employer for his position that he is entitled to a 40% disability rating, the represented appellant, as noted above, does not argue that the VA medical examiner's report was inadequate for rating purposes and should have been returned by the Board.

We do not reach the question whether, for purposes of obtaining a 40% disability rating under DC 7913, medical evidence that restricts a person from driving as a part of his daily activities for his own safety due to uncontrolled diabetes is sufficient to meet the criterion of "regulation of activities" (i.e., claimant is required avoid "strenuous occupational and recreational activities"). The facts presented here and the findings made by the Board require us only to conclude that a decision by Mr. Camacho's employer to disqualify him from driving patients at the hospital where he worked did not constitute a "regulation of activities" of Mr. Camacho within the meaning of DC 7913 because there was no medical evidence that imposed any restrictions on Mr. Camacho's own personal activities and the restriction was imposed solely based on his having "insulin dependent"

10

diabetes. Finally, to be clear, the restriction was imposed because he was "insulin dependent," not because he has uncontrolled diabetes. This distinction is important because something more than insulin dependence is required under DC 7913 to obtain the 40% disability rating and yet insulin dependence was the sole basis for the employer-imposed restriction.

Accordingly, reviewing the record in its entirety, the Board's factual determination that the appellant was not entitled to a rating in excess of 20% for diabetes mellitus because his activity was not regulated was not clearly erroneous. *See* Gilbert, 1 Vet.App. at 53.

## III. CONCLUSION

Upon consideration of the parties' briefs and the record on appeal, the February 2, 2005, Board decision is AFFIRMED.

KASOLD, *Judge*, concurring in part and dissenting in part: I agree with the majority opinion in so far as it holds that the criteria established in DC 7913 for a 40% disability rating for diabetes are conjunctive and that one of those criteria requires that a claimant's activities be regulated such that he avoid strenuous occupational and recreational activities. I disagree, however, with the majority's conclusions that there is a "plausible basis for the Board's determination that there is no medical evidence that the appellant's activities are restricted." *See ante* at 7.

As noted by the majority, 38 C.F.R. § 4.10 (2006) states that the "basis of disability evaluations is the ability . . . to function under the ordinary conditions of daily life including employment" and requires VA medical examiners to furnish a "full description of the effects of disability upon the person's ordinary activity." Additionally, 38 C.F.R. § 4.1 (2006) requires "accurate and fully descriptive medical examinations . . . with emphasis upon the limitation of activity imposed by the disabling condition." In this instance, the VA medical examiner noted that Mr. Camacho's diabetes was uncontrolled and that his ability to drive safely had been questioned. The medical examiner opined that it would be safe for Mr. Camacho to continue to work "within the medical center without the responsibility to act as Van driver" and deferred to the VA medical center guidelines with regard to whether it would be safe for him to drive. R. at 117.

Implicit within the VA medical examiner's opinion that Mr. Camacho could continue to work in a non-driving capacity is that he should not be working in a driving capacity. Further, it certainly

11

raises the obvious question of whether Mr. Camacho should be driving at all, whether for work or recreation. This question should have been answered by the VA medical examiner as required by § 4.10. At a minimum, the Board should have sought clarification, and its failure to do so frustrates judicial review, warranting remand.[1] *See* 38 C.F.R. § 4.2 (2006) (when an examination report "does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes"); *Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (Board has duty to return inadequate examination report); *Stegall v. West*, 11 Vet.App. 268, 270-71 (1998) (remanding where VA examination was "inadequate for evaluation purposes"); *Hicks v. Brown*, 8 Vet.App. 417, 421 (1995) (inadequate medical evaluation frustrates judicial review); *see also* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (requiring the Board to provide a statement of reasons or bases that enables the claimant to understand the precise basis for the decision and to facilitate review in the Court); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

Moreover, inasmuch as the medical examiner was required by regulation to fully describe the effects of Mr. Camacho's diabetes on his ordinary activities and daily life including employment, his deferral to the VA medical center guidelines with regard to whether it would be safe for Mr. Camacho to drive can only be viewed as an adoption or incorporation into his opinion of the restrictions contained in those guidelines. Otherwise stated, any restrictions in the guidelines became part of the VA medical examiner's report and therefore constituted medical evidence. Accordingly, the Board also should have addressed the guidelines and whether they impose restrictions on Mr. Camacho's activities, and further addressed or sought clarification whether a

---

[1] Indeed, the majority's observation that the VA medical examiner was silent with regard to non-duty driving highlights the Board's failure to seek clarification, as well as the inadequacy of the Board's statement of reasons or bases. Moreover, although the majority correctly note that Mr. Camacho did not specifically argue that the medical opinion was inadequate, that does not change the fact that the Board should have sought clarification of the opinion, at a minimum, and that its failure to do so renders the Board's statement of reasons or bases inadequate and therefore not facilitative of review, thus warranting remand. *See Allday v. Brown,* 7 Vet.App. 517, 527 (1995) (holding that the Board's statement of reasons or bases "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"). Our inability to properly review the Board decision stands as a separate basis for remand and is, by definition, independent of any arguments presented by the parties. *See Simmons v. Principi*, 17 Vet.App. 104, 115 (2003) (remanding where the Board's decision is not clear enough to permit effective judicial review).

restriction on driving at work for safety reasons due to a medical condition necessarily includes a restriction on driving for recreational reasons, and the Board's failure to do so frustrates review. *See* 38 U.S.C. § 7104(d)(1); *Allday* and *Gilbert*, both *supra*.

Similarly, to the extent Mr. Camacho's supervisor relieved him from driving duties in accordance with the VA medical center guidelines, such action, having been deferred to by the VA medical examiner, was, in effect, the physician's own recommendation and therefore a medical restriction on Mr. Camacho's driving (an occupational and daily life activity), thus warranting discussion thereof by the Board. *Fenderson v. West,* 12 Vet.App. 119, 127 (1999) ("[T]he Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran." (citing *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 605 (Fed. Cir.1996))).

Perhaps most significantly, I also disagree with the majority's observation that it is not faced with the issue of whether restricting a person from driving because of his insulin dependent diabetes[2] is not a medical restriction when done for safety reasons instead of for the limited purpose of controlling or avoiding an aggravation of his diabetes. *See ante* at 11. This ignores the predominate, underlying fact that the restriction on the driver is imposed not only for the safety of passengers, but also for the safety of the driver. More specifically, we should not overlook the obvious fact that the restriction in this matter was imposed because of the possibility that Mr. Camacho's diabetes could contribute to an accident that, logically, might result in injury to persons – including Mr. Camacho. *See* R. at 117 (medical opinion that it would be safe for Mr. Camacho perform duties other than van driver at the VA medical center); R. at 147 (Mr. Camacho's testimony that he is working "indoors" at the VA medical center). Furthermore, Mr. Camacho had already been diagnosed with insulin dependent diabetes when he began working in the transportation department of the North Chicago

---

[2] The August 3, 2004, letter from Stephanie D'Angelo, the North Chicago VA Medical Center's Employee Health Clinic Manager, states: "Recently a Motor Vehicle Operator physical was performed. Due to his insulin dependent diabetes, [Mr. Camacho] is disqualified from driving patients." R. at 113.

VA Medical Center in 2001.[3]  R. at 35-36.  That he worked for at least three years with the same condition for which his driving ultimately was restricted indicates the possibility of a change in his condition that the Board should have discussed or for which it should have sought  clarification, and which frustrates our proper review.  *See Allday, supra.*

Nothing in statute, VA regulations, or any interpretation provided by the Secretary supports the implicit conclusion of the Board that a restriction for safety reasons imposed because a person has diabetes is somehow not a "regulation of activities" as contemplated by the regulation.  Even counsel for the Secretary does not appear to argue this (as opposed to arguing it was not a restriction recommended by a medical provider), but to the extent one may interpret the briefing otherwise, the litigating position of counsel is not the type of agency decision-making that warrants deferral by the Court.  *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) ("'Litigating positions' are not entitled to deference when they are merely appellate counsel's '*post hoc* rationalizations' for agency action, advanced for the first time in the reviewing court.").

---

[3]  A 2001 VA Compensation and Pension Examination report reflects that Mr. Camacho was diagnosed with insulin dependent diabetes and that he began using insulin after a diabetic pill was determined to be ineffective in 1996.  R. at 35.