﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/19 Archive Date: 12/30/19

DOCKET NO. 190917-33151
DATE: December 31, 2019

ORDER

1. Entitlement to a disability rating in excess of 50 percent for generalized anxiety disorder is dismissed.

2. Entitlement to a disability rating in excess of 10 percent for a bilateral hearing loss disability is denied.

3. Entitlement to a disability rating in excess of 10 percent for tinnitus is denied.

4. Entitlement to a disability rating in excess of 20 percent for type II diabetes mellitus is denied.

5. Entitlement to an effective date earlier than May 9, 2019, for the award of an increased 100 percent disability rating for coronary artery disease status post myocardial infraction and coronary artery bypass graft surgery is denied.

6. Entitlement to an effective date earlier than May 9, 2019, for the award of eligibility to Dependents’ Educational Assistance under 38 U.S.C. Chapter 35, is denied.

7. Entitlement to an effective date earlier than May 9, 2019, for the award of special monthly compensation based on housebound criteria is denied.

FINDINGS OF FACT

1. An appeal for an increased rating for generalized anxiety disorder had already been activated into the BVA Legacy appeals system prior to the July 2019 rating decision issued in accordance with the AMA appeals system.

2. VA audiometric testing (contracted) in June 2019 revealed a 63 decibel puretone threshold average in the right ear and 76 decibel puretone threshold average in the left ear. Speech discrimination was measured at 86 percent in the right ear and 72 percent in the left ear. No worse than Level III hearing loss in the right ear and Level VI hearing loss in the left ear has been shown.

3. Throughout the appeal period, tinnitus has been assigned a 10 percent rating, the maximum schedular rating authorized under Diagnostic Code 6260; an unusual or exceptional disability picture is not presented by this disability.

4. Throughout the appeal, diabetes mellitus required a treatment regimen consisting of a prescribed oral hypoglycemic agent and a restricted diet, however, did not require insulin therapy or a regulation of activities and did not result in episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospital visits per year or twice a month visits to a diabetic care provider.

5. It is not factually ascertainable that the increase in disability of the service-connected coronary artery disease status post myocardial infraction and coronary artery bypass graft surgery first manifested within one year prior to receipt of his May 9, 2019 claim.

6. Basic eligibility for Dependents’ Educational Assistance benefits did not begin earlier than May 9, 2019, when the Veteran had a permanent and total service-connected disability.

7. Prior to May 9, 2019, the Veteran was not permanently housebound by reason of his service-connected disabilities, and his service-connected disabilities did not meet the percentage requirements for an award of statutory housebound special monthly compensation prior to that date.

CONCLUSIONS OF LAW

1. The Board lacks jurisdiction to review the Veteran’s claim of entitlement to a disability rating in excess of 50 percent for generalized anxiety disorder under the AMA appeals system. 38 U.S.C. § 7105(a).

2. The criteria for a disability rating in excess of 10 percent for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.3, 4.85, Diagnostic Code 6100 (2018).

3. The criteria for a disability rating in excess of 10 percent for tinnitus have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.87, Diagnostic Code 6260 (2018).

4. The criteria for a rating in excess of 20 percent for type II diabetes mellitus, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.15, 4.16, 4.25, 4.119, Diagnostic Code 7913 (2018).

5. The criteria for an effective date prior to May 9, 2019, for the award of an increased 100 percent disability rating for coronary artery disease status post myocardial infarction and coronary artery bypass graft surgery, have not been met. 38 U.S.C. §§ 1155, 5107, 5110; 38 C.F.R. § 3.400 (2018).

6. The criteria for an effective date prior to May 9, 2019 for basic eligibility for Chapter 35 Dependents’ Educational Assistance benefits have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.807 (2018).

7. The criteria for an effective date earlier than May 9, 2019 for the grant of special monthly compensation based upon housebound status have not been met. 38 U.S.C. §§ 1114(s); 5107 (2012); 38 C.F.R. §§ 3.102, 3.350 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1968 to May 1970.

The Board notes that the rating decision on appeal was issued in July 2019. In September 2019 the Veteran elected the modernized review system, also known as . 38 C.F.R. § 19.2(d).

The appeal stems from the Veteran’s submission of a form VA 21-8940, Veterans Application for Increased Compensation Based on Unemployability, on May 9, 2019. The Veteran’s representative asserted that a total disability evaluation based on individual unemployability (TDIU) was warranted as part and parcel to an increased rating claim for the Veteran’s service-connected generalized anxiety disorder, which was on appeal and activated to the Board under the Legacy system, the system for appeals review prior to implementation of the AMA system. It was specifically stated that this was not a new claim for TDIU, however, the Regional Office (RO) construed it as a claim for increase ratings for all of the Veteran’s service-connected disabilities and subsequently issued the rating decision on appeal.

The issue of entitlement to TDIU takes its place as part of an increased rating claim where a claimant or the evidence reasonably raises the possibility that the relevant disability causes or contributes to a claimant’s unemployability. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). The Board need not consider any disability other than the service-connected generalized anxiety disorder in adjudicating the TDIU component of the Veteran’s claim for an increased disability rating for generalized anxiety disorder. This form of TDIU claim is known as a “Rice TDIU,” because it was raised during the administrative appeal of the Veteran’s claim for an increased rating for his service-connected generalized anxiety disorder and it is, therefore, a component of that claim for benefits related solely to that disability. Id. Such a claim is limited to the question of whether a veteran is unemployable exclusively due to the service-connected disability (or disabilities) on appeal. In this case, there was no increased rating appeal before the Board at the time the Veteran’s representative was contending that a TDIU was part and parcel with the Veteran’s increased rating claim other than generalized anxiety disorder, and thus the Rice TDIU accepted as part-and-parcel of that rating issue is limited to the question of whether a TDIU is warranted solely due to the service-connected generalized anxiety disorder.

Moreover, under the Legacy system of appeals, when evidence of unemployability is submitted during the course of an appeal of an assigned disability rating, a claim for a TDIU due to that disability will be considered to have been raised by the record as “part and parcel” of the underlying increased rating claim, id., under the AMA system of appeals, in order for the Board to take jurisdiction over a claim for a TDIU due to the disability on appeal and for the holding in Rice to apply, the evidence of unemployability must: (1) be submitted prior to the AOJ decision or during an applicable 90-day evidence submission period; and (2) pertain to the period on appeal. Mere submission of evidence of unemployability is not necessarily sufficient to bring entitlement to a TDIU within the Board’s jurisdiction. On May 9, 2019, the Veteran submitted a VA 21-8940 indicating “tinnitus, bilateral hearing loss, diabetes mellitus, type II, ischemic heart disease, and generalized anxiety disorder,” were the service-connected disabilities that prevented him from securing or following any substantially gainful occupation, however, he indicated that the disabilities effected full-time employment in May 2005, thus outside of the period on appeal for the increased rating claims under the AMA system. The Board reiterates that the Veteran’s representative specifically clarified that the TDIU claim is part and parcel for the appeal of a higher rating relative to the service-connected generalized anxiety disorder and not a new claim for TDIU. 

In September 2019, the Veteran submitted a VA Form 10182, Decision Review Request: Board of Appeal (Notice of Disagreement), where he elected the Direct Review docket and requested that a Veterans Law Judge consider the increased rating and earlier effective date claims for generalized anxiety disorder and a TDIU as part and parcel under Rice. However, the Board lacks jurisdiction under the AMA system to both the increased rating claims for generalized anxiety disorder and the Rice TDIU. The increased rating claim was already on appeal to the Board from the Legacy system, the Veteran may not split review of components of the same issue into different review lanes. See 38 C.F.R. § 3.151(c)(2); 83 Fed. Reg. 39818, 39821-22 (Aug. 10, 2018). While a rating decision was technically issued in July 2019 in accordance with the AMA, the claims are ineligible at the time of the Veteran’s September 2019 election of Direct Review as the appeal for an increased rating for the Veteran’s service-connected generalized anxiety disorder had already been activated into the Board’s Legacy appeals system. Therefore, the issue of entitlement to an increased rating for generalized anxiety disorder and a TDIU based upon service-connected anxiety disorder will be addressed by the Board in a separate Legacy appeals system decision.

Increased Rating

Disability ratings are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). The percentage ratings in the Rating Schedule represent the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. The percentage ratings are generally adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the disability.

Diagnostic Codes (DCs) are assigned by the rating officials to individual disabilities. DCs provide rating criteria specific to a particular disability. If two DCs are applicable to the same disability, the DC that allows for the higher disability rating applies. See 38 C.F.R. § 4.7 (2018). When a question arises as to which of two ratings apply under a particular DC, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. See id. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of a veteran. 38 C.F.R. § 4.3.

In deciding claims, it is the Board’s responsibility to evaluate the entire record on appeal. See 38 U.S.C. § 7104(a) (2012). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Rather, the Board’s analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claims. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

 

1. Entitlement to a disability rating in excess of 50 percent for generalized anxiety disorder from May 9, 2019 to July 31, 2019.

The Board lacks jurisdiction under the AMA system. As mentioned above, the appeal was received by the VA after the appeal had been transferred to and activated by the Board under the Legacy system. As such, the Board will adjudicate this appeal under the Legacy system. Therefore, the appeal under the AMA appeals system is dismissed.

2. Entitlement to a disability rating in excess of 10 percent for a bilateral hearing loss disability from May 9, 2019 to July 31, 2019.

The Veteran is seeking a disability rating for a bilateral hearing loss disability in excess of 10 percent.

Hearing loss is evaluated under 38 C.F.R. § 4.85, DC 6100 using a mechanical formula. Disability ratings for service-connected hearing loss range from noncompensable to 100 percent and are determined by inserting numbers, which are assigned based on the results of audiometric evaluations, into Table VI in DC 6100. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). The Rating Schedule establishes eleven Roman numeral auditory acuity levels that range from Level I (essentially normal hearing acuity) to Level XI (profound deafness). Id. The level of auditory acuity is based on the average puretone threshold (derived from the results of puretone audiometric tests in the frequencies 1000, 2000, 3000, and 4000 Hertz) and organic impairment of hearing acuity (measured by controlled speech discrimination test; Maryland CNC). See 38 C.F.R. § 4.85, Table VI. The columns in Table VI represent nine categories of decibel loss as measured by puretone threshold averages. The rows in Table VI represent nine categories of organic impairment of hearing acuity as measured by speech discrimination tests. The numeric designation of impaired hearing (Levels I through XI) is determined for each ear by intersecting the column that represents the relevant puretone threshold average with the row that represents the relevant speech discrimination test result. Id. 

Exceptional patterns of hearing impairment are provided for in 38 C.F.R. § 4.86 (2018). When the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear is evaluated separately. 38 C.F.R. § 4.86(a). 

The percentage evaluation is derived from Table VII in 38 C.F.R. § 4.85 by intersecting the row that corresponds to the numeric designation for the ear with better hearing acuity (as determined by Table VI) and the column that corresponds to the numeric designation level for the ear with the poorer hearing acuity (as determined by Table VI). For example, if the better ear has a numeric designation Level of “V” and the poorer ear has a numeric designation Level of “VII,” the percentage evaluation is 30 percent. See id.

The question in this appeal is whether the Veteran’s bilateral hearing loss disability meets criteria for a disability rating of at least 20 percent using the mechanical application of the rating schedule which incorporates both the puretone threshold average and the speech recognition ability percentage.

The Board finds that the Veteran’s bilateral hearing loss disability did not meet the criteria for at least a 20 percent disability rating.

In June 2019, the Veteran underwent an audiological examination (contracted Disability Benefits Questionnaire (DBQ)), which showed that the Veteran’s puretone thresholds, in decibels, were as follows:

 HERTZ 

 1000 2000 3000 4000 Average

RIGHT 40 45 75 90 63

LEFT 45 65 90 105+ 76

Speech discrimination tests used the Maryland CNC word list and revealed speech recognition ability of 86 percent in the right ear and 72 percent in the left ear.

Using the right ear puretone average of 63 decibels from June 2016 examination and a speech recognition score of 86 percent; the right ear received a designation of III under Table VI. See 38 C.F.R. § 4.85. Because the left ear had a puretone average of 76 decibels and speech recognition score of 72 percent, it received a designation of VI under Table VI. See id. Table VIa will not be taken into consideration for the either the right or left ear because the puretone threshold in decibels are not above 55 decibels for each of the frequencies 1000, 2000, 3000, and 4000 Hertz bilaterally. See 38 C.F.R. § 4.86(a). The intersection of row III for the better ear and column VI for the poorer ear on Table VII established that under the June 2019 examination, the Veteran’s hearing loss is entitled to a 10 percent disability rating. See 38 C.F.R. § 4.85, DC 6100.

The Veteran has been provided objective, controlled speech discrimination tests using the appropriate VA-approved Maryland CNC word list during his audiological examination. The speech discrimination test specifically assesses word comprehension and assigns a speech recognition ability percentage. The disability ratings are derived by a mechanical application of the rating schedule which incorporates both the puretone threshold average and the speech recognition ability percentage. Lendenmann, 3 Vet. App. at 349. The examination provided to the Veteran resulted in a 10 percent disability rating. Mechanical application of the Rating Schedule to the audiometric findings does not establish entitlement to a disability rating higher than 10 percent at any point of the appeal period. There was no additional audiometric testing conducted during the appeal period showing that the criteria for a 20 percent or higher rating have been met or approximated.

The preponderance of the evidence is against the claim for a higher rating for the Veteran’s bilateral hearing loss disability. The impairment associated with this disability is contemplated by the rating criteria, which consider the average impairment resulting from a service-connected disability. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Absent audiometric and speech discrimination scores showing that the Veteran’s hearing loss disability meets the schedular criteria for an increased rating, his reported functional impairment does not warrant a higher rating than is already assigned. See 38 C.F.R. § 4.85; Lendenmann, 3 Vet. App. at 349. Thus, the benefit-of-the-doubt rule does not apply, and entitlement to a disability rating in excess of 10 percent for a bilateral hearing loss disability is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.

3. Entitlement to a disability rating in excess of 10 percent for tinnitus from May 9, 2019 to July 31, 2019.

The Veteran is seeking an increased rating for bilateral tinnitus. The Veteran has been assigned a 10 percent rating for his tinnitus, which is the maximum schedular allowance under DC 6260 and there is no provision for assignment of a separate 10 percent evaluation for tinnitus of each ear.

In Smith v. Nicholson, 451 F.3d 1344 (Fed. Cir. 2006), the United States Court of Appeals for the Federal Circuit found that 38 C.F.R. § 4.25(b) and 38 C.F.R. § 4.87, DC 6260 limit a Veteran to a single disability rating for tinnitus, regardless of whether the tinnitus is unilateral or bilateral.

The question in this appeal is whether the Veteran’s disability presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extraschedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the established schedular criteria are inadequate to describe the severity and symptoms of the claimant’s disability. See Thun v. Peake, 22 Vet. App. 111, 118 (2008).

The Veteran’s tinnitus is manifested by constant ringing and buzzing in both ears, as described during the June 2019 examination (contracted DBQ). The Veteran’s tinnitus is contemplated by the rating criteria under DC 6260. It has not been shown that the Veteran’s tinnitus interferes with the Veteran’s daily activities, specifically, the Veteran indicated that his tinnitus did not impact ordinary conditions of life, including ability to work in during the June 2019 examination. The rating schedule for tinnitus is written so broadly and inclusively so as to compensate for all associated symptoms and functional effects. See 38 C.F.R. § 4.87; 68 Fed. Reg. 25822 (May 14, 2003).

Notably, in Doucette v. Shulkin, the United States Court of Appeals for Veterans Claims has made clear that a diagnostic code need not list every word or type of symptom to contemplate a type of functional effect. For instance, problems with hearing sounds in crowds, televisions or telephones are not listed in the diagnostic code for hearing loss but are nonetheless contemplated because they are the actual effects of the hearing loss in daily life. See Doucette v. Shulkin, 28 Vet. App. 366 (2017). Here, although in the context of a tinnitus extraschedular rating claim, the Doucette decision by extension shows that the symptoms of the Veteran’s tinnitus, and any functional effects, are contemplated by the rating schedule for evaluating the disability.

The Board finds that the rating criteria adequately describe the Veteran’s disability level and symptomatology. Thus, his disability picture is contemplated by the rating schedule, and the assigned schedular evaluation is, therefore, adequate. See Thun v. Peake, 22 Vet. App. at 115. Consequently, referral for extraschedular consideration is not warranted.

4. Entitlement to a disability rating in excess of 20 percent for diabetes mellitus, type II, from May 9, 2019 to July 31, 2019.

The Veteran contends that his diabetes mellitus, type II, should be rated higher than the currently-assigned disability rating of 20 percent under 38 C.F.R. § 4.119, DC 7913.

Diabetes mellitus is evaluated under 38 C.F.R. § 4.119, DC 7913. Under DC 7913, a 10 percent rating is warranted for diabetes mellitus that is manageable by a restricted diet only. A 20 percent rating is warranted where insulin and restricted diet, or; use of oral hypoglycemic agent and restricted diet is required. A 40 percent rating is warranted where insulin, restricted diet, and regulation of activities is required. A 60 percent rating is warranted for diabetes mellitus requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. A 100 percent rating is warranted for diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulations of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119, DC 7913.

Note (1) to DC 7913 provides that compensable complications of diabetes are to be rated separately unless they are part of the criteria used to support a 100 percent rating (under DC 7913). Noncompensable complications are considered part of the diabetic process under DC 7913. Id.

The criteria for rating diabetes mellitus are conjunctive, meaning that each element of the criteria is needed to meet the requirements for the specified evaluation. See Camacho v. Nicholson, 21 Vet. App. 360 (2007). The use of the conjunctive “and” in a statutory provision means that all of the conditions listed in the provision must be met. Melson v. Derwinski, 1 Vet. App. 334 (1991).

insulin, restricted diet, and 

The evidence indicates that throughout the appeal period, the Veteran’s diabetes mellitus, at worst, was being managed by a prescribed oral hypoglycemic agent and a restricted diet. Furthermore, the evidence shows that the Veteran did not require insulin or a regulation of activities as part of his treatment regimen at any point in the appeal period. For example, in July 2019, the Veteran was afforded an examination (contracted DBQ) for diabetes mellitus, the examiner documented that the Veteran’s diabetes mellitus was treated with a prescribed oral hypoglycemic agent. The examination report also reflects that the Veteran did not have episodes of ketoacidosis or hypoglycemic reactions that required hospitalization. The Veteran was noted to visit his diabetic care provider for episodes of ketoacidosis or hypoglycemia less than 2 times per month. The examiner determined that although the Veteran was instructed to follow a restricted diet, he was not restricted in ability to perform strenuous activities as a part of medical management for diabetes mellitus.

The examiner documented that the functional impact of the Veteran’s diabetes on his ability to work is difficulty with decrease physical stamina and endurance, standing, walking and motor coordination, heavy exertion and tactical discrimination, manual dexterity and intolerance to extreme temperatures, long hours without rest/food intake, problems with concentration, visual activity and intolerance to occupations that pose unusual injury hazards (cuts, burns, skin injuries) all of which decreases productivity. However, no recognized complications of diabetes mellitus, including diabetic peripheral neuropathy, diabetic nephropathy or renal dysfunction, or diabetic retinopathy, were found on examination.

It is clear that the term “regulation of activities” should be read in the context of how physical activities can adversely affect one’s ability to control a diabetic condition. VA Medical records, including in March 2019, indicate that the Veteran was counseled on the importance of regular exercise and/or physical activities in the control of blood pressure. The medical records do not show that an avoidance of strenuous occupational and recreational activities was prescribed in the context of how physical activities can adversely affect one’s ability to control a diabetic condition but instead exercise was recommended in an effort positively affect his health. See Camacho, 21 Vet. App. 360.

As the rating criteria are conjunctive, for a higher 40 disability rating to be warranted, insulin, restricted diet, and regulation of activities are all required to be a part of the Veteran’s treatment regimen. The Veteran has not shown to have even required the use of insulin to manage his diabetes mellitus. 38 C.F.R. § 4.119, DC 7913. See Camacho, 21 Vet. App. 360. See also Melson, 1 Vet. App. 334. Similarly, because of the conjunctive rating criteria, a 60 or 100 percent rating are not met as a regulation of activities is part of the criteria for the respective ratings. 38 C.F.R. § 4.119, DC 7913. See Camacho, 21 Vet. App. 360. 

The preponderance of the evidence is against a finding that supports entitlement to an increased disability rating at any point during the appeal period. The medical evidence demonstrates that the Veteran’s diabetes mellitus has been medically managed through a combination of a prescribed oral hypoglycemic agent and a restricted diet; this satisfies the criteria for a 20 percent disability rating and no higher. 38 C.F.R. § 4.119 DC 7913.

The Board has considered application of additional DCs that may be raised by the evidence of record. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). As discussed above, the July 2019 examiner found that there were no recognized complications of diabetes mellitus including diabetic peripheral neuropathy, diabetic nephropathy or renal dysfunction, or diabetic retinopathy found on examination. Further, a November 2018 VA ophthalmology note shows that there were no diabetic eye changes and no diabetic retinopathy was evident. Accordingly, the Board finds that entitlement to a separate disability rating for complications caused by diabetes mellitus is not warranted.

For these reasons, the Board finds the preponderance of the evidence weighs against entitlement to an increased disability rating for diabetes mellitus, type II, in excess of 20 percent, at any point during the appeal period. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application and the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

Earlier Effective Date

The law regarding effective dates states that, unless specifically provided otherwise, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C. § 5110(a). This statutory provision is implemented by a VA regulation, which provides that the effective date of an evaluation and award of compensation based on an original claim or a claim reopened after final disallowance will be the date of receipt of the claim or the date entitlement arose, whichever is the later. See 38 C.F.R. § 3.400. An effective date for a claim for increase may be granted prior to the date of claim if it is factually ascertainable that an increase in the disability occurred within one year from the date of claim. 38 U.S.C. §§ 5110(b)(2) (2012); 38 C.F.R. §§ 3.400(o)(1) and (2).

A specific claim in the form prescribed by the Secretary of VA must be filed in order for benefits to be paid or furnished to any individual under the laws administered by VA. 38 U.S.C. § 5101(a)(1); 38 C.F.R. § 3.151(a). For claims received on or after March 24, 2015, VA amended its regulations governing how to file a claim. The effect of the amendment was to standardize the process of filing claims, as well as the forms accepted, in order to increase the efficiency, accuracy, and timeliness of claims processing, and to eliminate the concept of informal claims. See 38 C.F.R. § 3.155; 79 Fed. Reg. 57660-01. However, prior to the effective date of the amendment, an informal claim was any communication or action, indicating an intent to apply for one or more benefits under the laws administered by VA. The benefit sought must be identified, see Stewart v. Brown, 10 Vet. App. 15, 18 (1997), but need not be specific, see Servello v. Derwinski, 3 Vet. App. 196, 199 (1992). See 38 C.F.R. § 3.155(a) (2012).

5. Entitlement to an effective date earlier than May 9, 2019, for the award of an increased 100 percent disability rating for coronary artery disease status post myocardial infraction and coronary artery bypass graft surgery.

The Veteran is seeking an effective date earlier than May 9, 2019, for an increased 100 percent disability rating for service-connected coronary artery disease status post myocardial infraction and coronary artery bypass graft surgery (coronary artery disease).

factually ascertainable that an increase in disability had occurred in the year prior to the receipt of such claim.

The Board has thoroughly and sympathetically reviewed the evidence of record and finds that an effective date earlier than , for the grant of an increased rating of 100 percent for service-connected coronary artery disease, is not warranted because the Veteran did not file an informal claim, a formal claim, or expressed, in writing, an intent to file a claim for entitlement to an increased rating prior to . The July 2019 rating decision granted an increased 100 percent disability rating, effective, May 9, 2019. This is the date that the Veteran submitted a VA 21-8940, in support of his Rice TDIU claimed as part-and-parcel to his existing claim for an increased rating for his service-connected generalized anxiety disorder, which the RO construed as a claim for increased evaluations for all of the Veteran’s service-connected disabilities, to include coronary artery disease, explained above. Thus, May 9, 2019 shall be the date of the claim.

As set out above, in claims for increased evaluations, the effective date will be the earliest date as of which it is factually ascertainable that an increase in disability had occurred if the claim is received within one year from such date. Otherwise, the date of receipt of the claim controls. 38 C.F.R. § 3.400(o)(2).

The evidence, including VA treatment records, one year prior to May 9, 2019, does not show the severity of the Veteran’s coronary artery disease was at its current level, which was shown upon testing during a VA examination in May 2019. Thus, the Board finds that an increase in the severity of the Veteran’s coronary artery disease has not been shown to have occurred at an identifiable time within one year prior to the date the Veteran submitted a VA 21-8940, construed by the RO as a claim, on May 9, 2019, and the date of receipt of the claim controls. Id.

Thus, the preponderance of the evidence is against a basis on which an earlier effective date may be assigned for the award of an increased 100 percent rating for coronary artery disease, and the proper effective date is May 9, 2019. The claim for entitlement to an effective date earlier than May 9, 2019, for the award of a 100 percent disability rating for service-connected coronary artery disease is denied because the AOJ has already assigned the proper effective date provided by law. See 38 U.S.C. § 5110(a); 38 C.F.R. §§ 3.155(a), 3.400.

6. Entitlement to an effective date earlier than May 9, 2019, for the award of eligibility to Dependents’ Educational Assistance under 38 U.S.C. Chapter 35.

For the purposes of Dependents’ Educational Assistance (DEA) benefits, basic eligibility exists if a veteran was discharged from service under conditions other than dishonorable, and if he has a permanent and total service-connected disability. 38 U.S.C. § 3501; 38 C.F.R. §§ 3.807, 21.3021(p) (2018). There are other avenues through which basic eligibility may be granted; however, they involve factors not applicable here, e.g., the death of a veteran or if a veteran is currently on active duty. Id.

Permanence of total disability will be taken to exist when such impairment is reasonably certain to continue throughout the life of the disabled person. Diseases and injuries of long-standing that are actually totally incapacitating will be regarded as permanently and totally disabling on the probability that permanent improvement under treatment is remote. The age of the disabled person may be considered in determining permanence. See 38 C.F.R. § 3.340(b) (2018). Once permanence is established, a veteran need not undergo further VA examination in order to retain his rating for the permanent disability. See 38 C.F.R. § 3.327(b)(2)(iii) (2018).

The Board finds that the Veteran had a permanent and total service-connected disability, effective May 9, 2019, when a 100 percent rating for his service-connected coronary artery disease was effective. As mentioned above, the Veteran’s submission of a VA 21-8940 on May 9, 2019, was construed by the RO as a claim for increase for all of his service-connected disabilities. The Veteran was afforded a VA examination in May 2019 and based on the results of this examination, the RO found that the disability worsened and granted an increased 100 percent permanent and total disability for the Veteran’s service-connected coronary artery disease, effective May 9, 2019, the date of the submission of the VA 21-8940.

As discussed above, the Board determines that an effective date for the award of the 100 percent rating for the Veteran’s service-connected coronary artery disease is May 9, 2019, and no earlier. Since eligibility for DEA benefits is predicated on a finding of permanent and total disability in this case, the effective date of such eligibility cannot precede the date permanent and total disability was awarded Accordingly, the correct effective date is May 9, 2019, and no earlier. The appeal for an effective date earlier is without legal merit and must be denied. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). For these reasons, the benefit of the doubt doctrine is not for application and the claim for entitlement to an earlier effective date for DEA benefits is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

7. Entitlement to an effective date earlier than May 9, 2019, for the award of special monthly compensation based on housebound criteria is denied.

The Veteran is seeking entitlement to an effective date earlier than May 9, 2019 for the grant of special monthly compensation (SMC) based upon housebound status. 

SMC at the rate provided under 38 U.S.C. § 1114 (s) is payable where a Veteran has a single service-connected disability rated as 100 percent disabling and either additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems or is otherwise “permanently housebound” by reason of such disability or disabilities. 38 U.S.C. § 1114(s) (2012); 38 C.F.R. § 3.350(i) (2018). One is permanently housebound when substantially confined to his or her dwelling and the immediate premises or, if institutionalized, to the war or clinical area, and it is reasonably certain that the disability or disabilities wand resultant confinement will continue throughout his or his lifetime. 38 C.F.R. § 3.351(d) (2018).

The Veteran was granted entitlement to SMC based upon statutory housebound status from May 9, 2019, the effective date of a 100 percent rating for service-connected coronary artery disease. The Board has found above that May 9, 2019 is the earliest possible date for the increased 100 percent rating. Prior to the increased 100 percent rating, the Veteran did not meet the schedular percentage requirements described above to warrant SMC based upon statutory housebound criteria, nor was he actually permanently housebound due to his service-connected disabilities. Specifically, May 2018 VA medical records even indicate that the Veteran requested medication to claim his nerves and for sea sickness because he was going on a cruise.

As such, his claim of entitlement to an effective date earlier than May 9, 2019 for the grant of SMC based upon housebound status must be denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. at 430. As such, there is no reasonable doubt to be resolved, and the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

 

 

A. P. SIMPSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D. Cheng, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.